## IOWA CENTRAL RAILWAY COMPANY *v.* IOWA.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 128. Submitted December 18, 1895. — Decided January 6, 1896.

The Fourteenth Amendment to the Constitution in no way undertakes to control the power of a State to determine by what process legal rights may be asserted, or legal obligations be enforced, provided the method of procedure adopted for these purposes gives reasonable notice, and affords fair opportunity to be heard, before the issues are decided.

Whether the court of last resort of a State has properly construed its own constitution and laws in determining that a summary process under those laws was applicable to the matter which it adjudged, is purely the decision of a question of state law, binding upon this court.

This court has no power to review a decision of a state court that the averments of an answer in a pending case set forth no defence to the plaintiff's claim.

It is no denial of a right protected by the Constitution of the United States to refuse a jury trial in a civil cause pending in a state court, even though it be clearly erroneous to construe the laws of the State as justifying the refusal.

In 1880, the Central Iowa Railway Company, which had become the owner, through foreclosure proceedings, of the railroad of the Central Railway Company of Iowa, leased to the Burlington, Cedar Rapids and Northern Company about eleven miles of said road, which lay between Manly Junction and Northwood, the northern terminus of the Central company's road. The Burlington company took exclusive possession of the leased premises. In 1881 the citizens of Northwood made application to the state railroad commissioners for an order requiring the Central Iowa Railway Company to operate such leased portion of its road, and after due notice a hearing was had before the commissioners, and, in 1883, the order prayed for was granted. As the company failed to obey, an action was brought, pursuant to chapter 133, Iowa laws of 1884, to compel compliance with the order of the commissioners. The state district court rendered a decree against the railroad company, and on appeal, after a hearing and overruling of a motion for rehearing, the Supreme Court of the State, in October, 1887, entered a decree, ordering, adjudging, and decreeing that the Central Iowa Railway Company operate such leased portion of its line, and enjoining the Burlington company from interference therewith. The opinion of the Supreme Court is reported in 71 Iowa, 410.

During the pendency of this litigation, however, foreclosure proceedings were instituted in the Circuit Court of the United States for the Southern District of Iowa, against the Central Iowa Railway Company, and, while the cause was pending in the Supreme Court of Iowa, on the appeal of the company a receiver of its property was appointed. A decree of foreclosure was entered, and, in September, 1887, the road was sold. Subsequently, the purchaser assigned his purchase to

the Iowa Railway Company, a corporation of Iowa, which company thereafter made conveyance to plaintiff in error herein, an Illinois corporation, and the receiver surrendered possession to it on May 30, 1889.

In August, 1889, the Attorney General of the State of Iowa filed a petition in the Supreme Court of the State, in the name of the State as plaintiff, against the Iowa Central Railway Company, alleging the entry of the decree of October, 1887, above referred to; that thereafter the Iowa Railway Company had become the successor, assignee, and grantee of the Central Iowa Railway Company, and was operating and running its line contrary to the terms and provisions of the decree and in violation thereof. A mandatory injunction was prayed to compel the defendant to obey the command. and order contained in said decree.

A copy of said petition with notice of an intention to apply for an order to show cause why the order and decree referred to should not be obeyed, was served upon the railway company. That company filed its answer and amendments thereto, which, in substance, set forth that it was not a party to the suit in which the decree was rendered; that the Central Iowa Railway Company at the time of the entering of the decree was dead to all intents and purposes, by reason of the fact that a receiver had theretofore been appointed and the road of the company sold under foreclosure; that defendant was not the successor, assignee, or grantee of said Central Iowa Railway Company and had not been adjudged so to be; that no demand had been made upon it to perform the decree, and that a mandatory writ ought not to be issued until it had an opportunity of testing in a regular manner the right of the State to require the performance of the decree in question. The defendant also filed a demand for a jury trial. Thereupon a motion was made on behalf of the State to enter the order prayed for in the petition, upon the ground that the defendant in its answer had not shown cause why such order should not be made, and for the further reason that from the record and pleadings in the proceeding it appeared that the plaintiff was entitled to such order. Plaintiff's motion for

judgment was granted, and on October 26, 1891, an entry was made in the cause in the words and figures following: " In this cause the court, being fully advised in the premises, file their written decision and find that plaintiff is entitled to an order for the operation of the road by defendant as prayed for, and that a writ issue accordingly. It is further considered by the court that the defendant pay the costs of this court, taxed at $22.75, and that execution issue therefor."

The cause was then brought to this court by writ of error.

*Mr. Anthony C. Daly* for plaintiff in error.

*Mr. Milton Remley,* Attorney General of the State of Iowa, for defendant in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The contention of the plaintiff in error is that the proceeding instituted against it in the Supreme Court of Iowa was an action for mandamus, and that no such action could lawfully be brought to compel it to operate the leased portion of its road until its legal duty to do so had been previously determined by the verdict of a jury. There was no assertion that the court below had no jurisdiction over the subject-matter. Nowhere in the answer or in the amendments to the answer filed on behalf of the company was it claimed that the proceeding was violative of the Constitution of the United States, or assailed any right, title, privilege, or immunity specially set up or claimed under that Constitution. Indeed, there was no mention of any right thereunder until the filing of a brief for defendant entitled "Defendant's Resistance and Objection to Plaintiff's Motion to Enter Order Prayed for in the Petition," in the ninth paragraph whereof it was claimed that it would be a violation of the Fourteenth Amendment of the Constitution of the United States to grant the order prayed for upon the motion in question. It is apparent that this defence merely asserted that the rights of the corporation as a

citizen of the United States would be impaired by enforcing the claim urged against it on the motion, instead of by another and less summary form of action. But it is clear that the Fourteenth Amendment in no way undertakes to control the power of a State to determine by what process legal rights may be asserted or legal obligations be enforced, provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided. This being the case, it was obviously not a right, privilege, or immunity of a citizen of the United States to have a controversy in the state court prosecuted or determined by one form of action instead of by another. It is also equally evident, provided the form sanctioned by the state law gives notice and affords an opportunity to be heard, that the mere question of whether it was by a motion or ordinary action in no way rendered the proceeding not due process of law within the constitutional meaning of those words. Whether the court of last resort of the State of Iowa properly construed its own constitution and laws in determining that the summary process under those laws was applicable to the matter which it adjudged, was purely the decision of a question of state law, binding upon this court. Mere irregularities in the procedure, if any, were matters solely for the consideration of the judicial tribunal within the State empowered by the laws of the State to review and correct errors committed by its courts. Such errors affect merely matters of state law and practice, in no way depending upon the Constitution of the United States or upon any act of Congress. *Ludeling* v. *Chaffe*, 143 U. S. 301, 305.

As said by this court, speaking through Mr. Chief Justice Fuller, in *Leeper* v. *Texas*, 139 U. S. 462, 468: "Law in its regular course of administration through courts of justice is due process, and when secured by the law of the State the constitutional requirement is satisfied." There was a "regular course of administration" in the case at bar, as that term was employed in the case cited.

It is manifest that it was never contemplated by the framers of the Constitution that this court should sit in review, as an

appellate court, of such a question as that presented by the record in the case at bar, viz., whether or not the highest court of a State erred in holding that it could rightfully determine from the statements in the pleadings filed by both parties to a controversy pending before it that the averments of an answer set forth no defence to the claim of the plaintiff.

It was not a denial of a right protected by the Constitution of the United States to refuse a jury trial, even though it were clearly erroneous to construe the laws of the State as justifying the refusal. *Brooks* v. *Missouri*, 124 U. S. 394; *Spies* v. *Illinois*, 123 U. S. 131, 166.

*Writ of error dismissed for want of jurisdiction.*