## HARTFORD FEDERAL SAVINGS AND LOAN ASSOCIATION
### *v.* STANLEY V. TUCKER ET AL.
### (11189)

PETERS, C. J., DANNEHY, ASPELL, F. HENNESSY and MENT, Js.

Argued February 14—decision released May 7, 1985

*Stanley V. Tucker,* pro se, the appellant (defendant).

*Robert B. Basine,* for the appellee (plaintiff).

*Frederick D. Augenstern,* for the receiver of rents (Frances Gionfrido).

DANNEHY, J. These cases were before this court in a previous appeal by the named defendant, Stanley V. Tucker (hereinafter the defendant), from judgments of foreclosure; *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 436 A.2d 1259 (1980); and the following facts appeared.

On September 15, 1978, Hartford Federal Savings and Loan Association, the plaintiff, commenced four separate mortgage foreclosure proceedings against Stanley V. Tucker, the defendant, as owner of the equity of redemption, and other defendants, concerning four properties located at 65 and 69 Amity Street, 963 Capitol Avenue and 38 South Whitney Street, all in Hartford. On December 1, 1978, pursuant to General Statutes § 52-87, concerning notices to out-of-state defendants, the defendant's motion for a statutory continuance was granted.

Upon written motion of the plaintiff, the trial court appointed a rent receiver for all four properties. Subsequently, on March 13, 1979, the plaintiff moved for default for failure to plead and for judgment against the defendant. The motion for default came before the court on April 20, 1979. On that day, before court opened, the defendant filed his answer, special defenses and counterclaims. The trial court, however, held that the defendant's pleadings were "improper," "improperly filed," and "not in accordance with the Practice Book," and refused to accept them. The court then

ordered that a default be entered against the defendant for failure to plead. The plaintiff thereafter pursued its motion for judgment which was heard and argued by the parties on April 20, 1979, and April 23, 1979.

The court ordered a foreclosure by sale for the premises at 65 Amity Street and 38 South Whitney Street, and strict foreclosure for the premises at 69 Amity Street and 963 Capitol Avenue. From the judgments rendered the defendant appealed to this court.

On appeal, this court held that the defendant's pleadings were not untimely at the time they were filed and set aside the judgments of the trial court. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* supra, 609.

These four cases were tried together and the facts discussed are equally applicable to each case. The complaints are the same and rely quite simply upon nonpayment. On remand, the defendant denied nonpayment and pleaded special defenses. The defendant's answer additionally pleaded counterclaims for damages. On January 28, 1981, the plaintiff moved to strike the special defenses and counterclaims as demonstrably improper and constituting no defense. The trial court, *Hammer, J.,* on March 9, 1981, granted the motion in its entirety. Thereafter, on March 24, 1981, the defendant filed a substitute answer which contained in substance special defenses and counterclaims identical to those that were stricken on the plaintiff's motion.

On October 26, 1981, the plaintiff applied for the appointment of a new receiver of rents because the former rent receiver had resigned. The defendant made timely objection and moved for a judgment declaring Practice Book §§ 504 through 510 unconstitutional and void. He also applied that he himself be appointed as rent receiver. After a hearing, the trial court, *Vasington, J.,* denied the defendant's motions and

appointed Plaza Realty as rent receiver on December 21, 1981. From those orders the defendant filed the present appeal.[1] After a trial to the court, final judgments of strict foreclosure on all four properties were rendered by *Barall, J.,* on August 17, 1983. The defendant appealed.

The defendant's appeal is in two parts; first, his attack on the constitutionality of the procedures for the appointment of rent receivers, and second, his claims of error with regard to the final judgments of foreclosure.

## I

An action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties. *Beach* v. *Isacs,* 105 Conn. 169, 176, 134 A. 787 (1926). The object of appointing receivers is to secure the property in dispute from waste or loss. 2 Swift, Digest, p. 159. It is not the office of a court of equity to appoint receivers as a mode of granting ultimate relief. They are appointed as a measure ancillary to the enforcement of some recognized equitable right. The complaints presently before us patently warrant such relief for the plaintiff. *Brand* v. *Woolson,* 120 Conn. 211, 214, 180 A. 293 (1935). The assets to which it would naturally look for payment may be wasted or lost during protracted litigation. The procedure for the appointment of receivers outlined by Chief Justice Swift has been merely supplemented by our rules of practice. 2 Swift, Digest, pp. 159–60; Practice Book §§ 504 through 510.

The defendant's claim, that the grant of the plaintiff's applications for the appointment of rent receivers

---

[1] Since that time, the defendant has made numerous motions, most of which have been denied, and he has repeatedly amended his appeal to include those denials as well as new issues.

denied him due process of law, is clearly untenable. His argument that Practice Book §§ 504 through 510 are unconstitutional because they allow for the ex parte appointment of a rent receiver without notice and an opportunity to be heard is even less persuasive.[2]

Due process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded. See *Fermont Division* v. *Smith,* 178 Conn. 393, 397, 423 A.2d 80 (1979), and cases cited therein. The fourteenth amendment prohibits the state from denying any person life, liberty or property without due process of law, but this adds nothing to the rights of one citizen as against another. *United States* v. *Cruikshank,* 92 U.S. 542, 554, 23 L. Ed. 588 (1876). The amendment "in no way undertakes to control the power of a State to determine by what process legal rights may be asserted or legal obligations be enforced, provided the method of procedure adopted for these purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided." *Iowa Central Ry. Co.* v. *Iowa,* 160 U.S. 389, 393, 16 S. Ct. 344, 40 L. Ed. 467 (1896). That opportunity is amply afforded by the rules under attack. In the first place, every application for the appointment of a receiver of rents shall be made in or ancillary to a civil action and no appointment may be made without notice unless sufficient cause appears. Practice Book § 506. Moreover, there is no violation of due process when a party in interest is given the opportunity at a meaningful time for a court hearing

---

[2] Practice Book § 506 specifically provides for the appointment of a rent receiver: "Every application for the appointment of a receiver of rents shall be made in or ancillary to a civil action and may be made either to the court before which such action is pending or when the court is not in actual session, to a judge in chambers. The court or judge may examine the plaintiff or his attorney and may thereupon appoint a receiver of rents. Notice of the hearing should be given when practical but such appointment may be made without notice if sufficient cause appears."

to litigate the question of the appointment of a receiver. In view of these safeguards we find unpersuasive the defendant's argument that the rules for the appointment of a receiver of rents are unconstitutional.

The defendant admits that he received notice of both the 1979 and 1981 applications for appointment of rent receivers and that full evidentiary hearings on each application were had. The defendant appeared with counsel at the hearing Judge O'Neill held on the plaintiff's motion for appointment of the first rent receiver. At that time, the defendant indicated that he did not "anticipate there would ever be any complaint on my part against" the proposed rent receiver, Frank Smith. The trial court then appointed Mr. Smith as rent receiver. The defendant was also present at the hearing held with respect to the appointment of the second rent receiver. He testified that he collected the rents from the four mortgaged properties for two months after the resignation of the rent receiver Frank Smith. He admitted that he had made no payments on the mortgage debt or for taxes during that period of time. The manager of Plaza Realty testified as to that firm's qualifications. He was then cross-examined extensively by the defendant. At the close of all the testimony, the trial court, *Vasington, J.,* appointed Plaza Realty as rent receiver.

It is clear from the record and from the defendant's own admission that he was given notice and a meaningful opportunity to be heard if he had objection to the appointment of a rent receiver. Under the facts of these cases, the defendant has failed to prove that our rules of practice denied him due process of law.

The defendant also claims that the rent receiver procedures are constitutionally deficient because they provide no mechanism for the discharge of a rent receiver who is negligent or committing waste. This claim is without merit.

A receiver of rents is subject, under our rules, to removal at any time at the pleasure of the court. Practice Book § 502.[3] Any party in interest, like the defendant here, may at any time move for the discharge of the receiver; Practice Book § 508;[4] or alternatively may seek the court's permission to sue the receiver. "[A] receiver is an officer of the court appointed on behalf of all who may establish an interest in the property." *Bergin* v. *Robbins,* 109 Conn. 329, 335, 146 A. 724 (1929). The receiver holds the property as an arm of the court and his possession is not that of the mortgagee. *Desiderio* v. *Iadonisi,* 115 Conn. 652, 655, 163 A. 254 (1932). If a receiver neglects to perform the duties required of him, the proper procedure is to petition the court for his removal. General Statutes § 52-513; Practice Book § 508; *Links* v. *Connecticut River Banking Co.,* 66 Conn. 277, 282, 33 A. 1003 (1895). A receiver may also be subject to suit, but only with the permission of the court. Id., 284. The requirement of court permission is essential for the protection of receivers against unnecessary and oppressive litigation. *Walsh* v. *Raymond,* 58 Conn. 251, 255–56, 20 A. 464 (1889). A receiver is presumed to be acting according to the will of the appointing judicial authority. *Links* v. *Connecticut River Banking Co.,* supra, 284. As such, consent to sue will not be granted where the receiver has kept clearly within the scope of his authority and acted wholly under the direction of the court. *Walsh* v. *Raymond,* supra, 255. This does not mean that a receiver while acting as such cannot be held personally

---

[3] "[Practice Book] Sec. 502. REMOVAL OF RECEIVERS

"Receivers may be removed at any time, at the pleasure of the court by which they were appointed or, if such court is not in session, by a judge thereof; and, if any receiver is removed or declines to act or dies, the court that appointed him, or, if such court is not in session, a judge thereof, may fill the vacancy."

[4] "[Practice Book] Sec. 508. ——DISCHARGE

"Any party in interest may at any time move for the discharge of the receiver."

liable for his actions, but simply that he will be protected so long as he acts strictly under the orders of the court appointing him. Id., 256.

We have carefully reviewed the pertinent parts of the record and transcript and we find that the defendant was afforded every opportunity in the trial court to pursue his complaints concerning the receivers of the rents. On at least two occasions, the defendant was advised that he could not, in his counterclaims, attack the plaintiff on the basis of any alleged misconduct on the part of the court-appointed receiver. The proper course, he was instructed by the court, was either to petition the court for removal of the rent receiver or to request the court's permission to sue the rent receiver. The defendant elected to object to the appointment of a new receiver of rents. The application for the appointment of a new receiver of rents was addressed to the sound legal discretion of the court, to be exercised with due regard to the rules, and such exercise is not to be disturbed lightly unless abuse of discretion or other material error occurs. 2 Swift, Digest, p. 160. The defendant alleged that he was better qualified to collect the rents. The plaintiff denied this was true. It was thus an issuable question of fact. The trial court found adversely to the defendant in this regard and refused to appoint him as receiver of rents. As we read the evidence available to us, we cannot say that this conclusion did not have a reasonable basis in fact. That being so, it was not an unreasonable or arbitrary exercise of discretion which led the trial court to appoint Plaza Realty as rent receiver.

## II

The defendant has attacked the judgments of strict foreclosure on several grounds, claiming that the trial court erred: (1) in finding that the mortgage debts were accelerated; (2) in finding that the defendant did not

tender payment of the mortgage debt in accordance with General Statutes § 49-8; (3) in its award of certain costs and legal fees; (4) in denying the defendant's special defenses and counterclaims; and (5) in ordering strict foreclosure as opposed to foreclosure by sale.

We note that the majority of the defendant's claims are challenges to findings of fact made by the trial court. Our review will be limited to whether the determination of the trier was clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The defendant contends that the bank did not effectively exercise its option to accelerate the mortgage debt because the defendant received no notice of acceleration. The short answer to this contention is that the institution of a foreclosure action constitutes a valid exercise of a mortgagee's acceleration right. See, e.g., *United Benefit Life Ins. Co.* v. *Holman,* 177 Neb. 682, 684–85, 130 N.W.2d 593 (1964). The defendant does not dispute that he received proper notice of the institution of the foreclosure actions.

The defendant next argues that, pursuant to General Statutes § 49-8 (a),[5] he tendered payment of the full debt on two of the mortgaged properties, and that a

---

[5] "[General Statutes] Sec. 49-8. RELEASE OF SATISFIED OR PARTIALLY SATISFIED MORTGAGE OR INEFFECTIVE ATTACHMENT, LIS PENDENS OR LIEN. DAMAGES. (a) The mortgagee or a person authorized by law to release the mortgage shall execute and deliver a release to the extent of the satisfaction tendered before or against receipt of the release: (1) Upon the satisfaction of the mortgage or (2) upon a bona fide offer to satisfy the same in accordance with the terms of the mortgage deed upon the execution of a release, or (3) when the parties in interest have agreed in writing to a partial release of the mortgage where that part of the property securing the partially satisfied mortgage is sufficiently definite and certain, or (4) when the mortgagor has made a bona fide offer in accordance with the terms of the mortgage deed for such partial satisfaction on the execution of such partial release."

bank officer accepted his offer. Although no money ever changed hands, the defendant maintains that the bank lost its right to foreclose on those two properties. "[The mortgagee] is not bound to tender or offer a release of the mortgage until the debt is satisfied." *Barnes* v. *Upham,* 93 Conn. 491, 495, 107 A. 300 (1919). The defendant's offer was conditioned on the plaintiff's acceptance of less than the full amount of the mortgage debts for a full release of the mortgages and on an agreement by the plaintiff to discharge the rent receiver. "A tender must be unconditional and unqualified." (Citation omitted.) *Housing Authority* v. *Pezenik,* 137 Conn. 442, 447, 78 A.2d 546 (1951). Under the circumstances, the trial court's finding that no legal tender was made is not clearly erroneous.

It is also argued that the trial court erred in including in its determination of the mortgage debt certain sums for escrow overdraft, legal fees incurred by the plaintiff in defending its lien in federal bankruptcy court, and attorney's fees. The defendant claims that neither the complaint nor the mortgage deeds and notes provided for the allowance of escrow overdraft and expenses incurred prior to the commencement of foreclosure. We have stated that "[i]n the absence of a request for a more specific statement the complaint need not detail the elements constituting the mortgage debt." *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* 183 Conn. 369, 375, 439 A.2d 396 (1981). The notes and mortgage deeds signed by the defendant obligated him to pay " 'all costs of collection, including reasonable attorney's fees incurred in any action to collect this note or foreclosure [sic] the mortgage securing the same, or in protecting or sustaining the lien of such mortgage.' " The escrow funds were used by the plaintiff to make tax and insurance payments on behalf of the defendant. The trial court was entitled to consider these costs as necessary to protect the mort-

gaged property. Legal fees were incurred by the plaintiff when it was named a party creditor in an action brought by the defendant in the federal bankruptcy court. The defendant's argument as to the propriety of including amounts attributable to bankruptcy proceedings in its award was effectively disposed of in *Mechanics Savings Bank* v. *Tucker,* 178 Conn. 640, 425 A.2d 124 (1979), wherein we stated that although federal bankruptcy proceedings "do not impinge directly on valid security interests, we are not prepared to say that such proceedings are necessarily so remote from the interests of a mortgagee" that the defendant, without any evidentiary showing, can avoid responsibility for such costs. Id., 647–49.

With respect to attorney's fees, the defendant's claim that part of the award to the plaintiff included fees for time spent pursuing the first foreclosure judgments which were overturned on appeal is frivolous. In its memorandum of decision, the trial court specifically excluded any claims for costs and fees for the appeals. The defendant's complaint that the amount of counsel fees was excessive is similarly unavailing. The trial court exercised discretion and awarded counsel fees based upon the necessary time required and the necessity of a trial. The trial court used the correct criteria and was able to observe at first hand the efforts of the plaintiff's counsel in the face of the defendant's stubborn defenses. The award rested in sound judicial discretion. We cannot say the amount allowed was excessive.

The defendant further argues that the trial court erred in rejecting his special defenses and counterclaims. We need only discuss his first special defense and first counterclaim as the remaining defenses and counterclaims either relate to the appointment and conduct of the rent receivers; see part I, supra; or have been abandoned on appeal.

The essence of the defendant's first special defense and first counterclaim is that the plaintiff, by negligently allowing a junior lienholder, Hartford Electric Light Company, to collect rents pursuant to a utility receivership, waived any claims it had under its mortgage. We can find no authority for the defendant's position that a mortgagee has a duty to step in and protect a mortgagor when a utility receivership is ordered under General Statutes § 16-262f. To the contrary, as we indicated in *Hartford Electric Light Co.* v. *Tucker,* 183 Conn. 85, 94, 438 A.2d 828 (1981), that a utility receivership may well lead to a mortgage foreclosure is a policy argument to be addressed to the legislature and not the courts.

Finally, the defendant claims that the trial court erred in its valuation of the mortgaged properties and in its orders for strict foreclosure. The trial court heard extensive testimony from both the plaintiff's and the defendant's appraiser as to the value of the properties. "The determination of [their] value by a court is the expression of the court's opinion aided ordinarily by the opinions of expert witnesses, and reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and its own general knowledge of the elements going to establish it. *Appeal of Cohen,* 117 Conn. 75, 85, 166 Atl. 747 [1933]." *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 233, 188 A. 433 (1936). The trial court's conclusion as to the value of the properties was necessarily based upon the opinions of the appraisers and finds support in the evidence. It is axiomatic that the determination of the credibility of expert witnesses and the weight to be accorded their testimony is within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible. *Greenfield Development Co.* v. *Wood,* 172 Conn. 446, 451, 374 A.2d 1084 (1977).

In light of our conclusion that the trial court's valuation of the properties is supported by the evidence, the defendant's remaining claim, that the trial court erred in ordering strict foreclosure as opposed to foreclosure by sale, must also fail. In Connecticut, the law is well settled that whether a mortgage is to be foreclosed by sale or by strict foreclosure is a matter within the sound discretion of the trial court. General Statutes § 49-24; *City Savings Bank* v. *Lawler,* 163 Conn. 149, 155, 302 A.2d 252 (1972); *Hartford Federal Savings & Loan Assn.* v. *Lenczyk,* 153 Conn. 457, 463, 217 A.2d 694 (1966). "The foreclosure of a mortgage by sale is not a matter of right, but rests in the discretion of the court before which the foreclosure proceedings are pending." *Bradford Realty Corporation* v. *Beetz,* 108 Conn. 26, 31, 142 A. 395 (1928). Having determined the fair market value of the properties and the amount of the mortgage debts, the trial court concluded that strict foreclosure was necessary. There was no abuse of discretion.

In conclusion we note that this litigation has lasted more than six years. The defendant, a layman, tried his own cases and argued his own appeal. Neither at trial nor on appeal has he failed to controvert each fact and challenge every ruling. While we do not fault his representation, we do caution against arguments of frivolous or contrived issues. On reviewing the matter, we have followed the liberal policy usual where a layman appears pro se and have carefully considered his claims so far as they are fairly presented upon the record. We conclude that there is no merit to his claims and that no injustice has been done to him under the law.

There is no error; the cases are remanded to the Superior Court for the fixing of new law days and other necessary orders not inconsistent with this opinion.

In this opinion the other judges concurred.