HARTFORD FEDERAL SAVINGS AND LOAN ASSOCIATION
*v.* STANLEY TUCKER ET AL.
(4628)

DUPONT, C. J., SPALLONE and STOUGHTON, Js.

Argued October 14, 1987—decision released January 19, 1988

*Stanley V. Tucker,* pro se, the appellant-appellee (named defendant).

*F. Gina Gelb,* with whom, on the brief, was *Frederic D. Augenstern,* for the appellee (receiver of rent).

*William L. Ankerman,* pro se, the appellee-appellant (committee of sale).

DUPONT, C. J. The history of this case is long and complex. It began more than nine years ago with the initiation by the plaintiff of four separate mortgage foreclosure actions against the named defendant (hereinafter the defendant) and others. The defendant is the owner of the equity of redemption on the four properties. A rent receiver, Frances Gionfrido, doing business as Plaza Realty, was appointed for all four properties upon motion of the plaintiff. The actions were consolidated and a trial court ordered foreclosure by sale for two of the properties and strict foreclosure for the other two. Two committees of sale, William L. Ankerman and Barbara Ruhe, were appointed by the court on or about April 20, 1979, to administer the sales of two of the

properties. After the sales had been made by the committees of sale but prior to the ratification of the sales by the court, the defendant filed an appeal from the judgments which had been obtained upon the default of the defendant for failure to timely plead. The appeal resulted in the setting aside of the judgments relating to all four properties, and in a remand to the trial court for consideration of the defendant's answer, special defenses, and counterclaims. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 436 A.2d 1259, cert. denied, 449 U.S. 956, 101 S. Ct. 363, 66 L. Ed. 2d 221 (1980).

Over a three year period (1982–1985), while the case was pending on remand, the defendant filed numerous motions attempting to have the rent receiver removed, principally claiming that the receiver had failed to obtain rents for the properties consistent with those in the Hartford rental market. All of these motions were denied. One trial court, *Brennan, J.,* did, however, remove the rent receiver as to one property, at the receiver's request, because the property could not produce sufficient income to justify the receiver's fees. Ultimately, another trial court, *Barall, J.,* rendered judgments of strict foreclosure for all four of the properties.

The defendant took a second appeal to the Supreme Court claiming that his motions requesting the appointment of a new receiver of rents and for his own appointment as the rent receiver, should have been granted. He also claimed that Practice Book §§ 504 through 510 were unconstitutional. The court found no error and in its opinion discussed extensively the procedures for petitioning the court for removal of a rent receiver and for requesting the court's permission to sue a rent receiver. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985).

The present case is the aftermath of the prior two cases. In this case, the committees of sale moved for fees and costs associated with the aborted 1979 sale, and the defendant sought permission to sue the rent receiver. The defendant appeals from a judgment of the trial court, *Hennessey, J.,* refusing him permission to sue the rent receiver and from the award by the trial court, *A. Aronson, J.,* of fees and expenses to the committees of sale. The substance of the defendant's claims is that Judge Hennessey erred (1) in denying him due process of law, and (2) in determining that the defendant had failed to establish a prima facie case against the rent receiver, and that Judge Aronson erred in awarding fees and expenses to the committees of sale. The committee of sale, Ankerman, claims in a cross appeal that the court erred in limiting the fees awarded.[1]

Judge Hennessey heard oral argument on the defendant's motion for permission to sue the rent receiver.[2] The substance of the defendant's claim was that the receiver had breached her duty by failing to collect rents consistent with the Hartford rental market from 1982 until 1985. After an exhaustive hearing which included extensive offers of proof by the defendant and a review of the transcript from earlier motions by the defendant on the same issue, the court found that the defendant had not established a prima facie case against the rent receiver.

I

We first consider the defendant's claim that he was denied due process of law.

[1] The second committee of sale, Ruhe, is not involved in this appeal.

[2] The defendant's claim that the court should have permitted him the opportunity to present testimony on his motion is without merit. The trial court determined that the defendant had not indicated an intention to present testimony. Practice Book § 211 (c) (1).

"Due process does not mandate a particular procedure but rather requires only that certain safeguards exist in whatever procedural form is afforded. See *Fermont Division* v. *Smith,* 178 Conn. 393, 397, 423 A.2d 80 (1979), and cases cited therein. The fourteenth amendment prohibits the state from denying any person life, liberty or property without due process of law, but this adds nothing to the rights of one citizen as against another. *United States* v. *Cruikshank,* 92 U.S. 542, 554, 23 L. Ed. 588 (1876). The amendment 'in no way undertakes to control the power of a State to determine by what process legal rights may be asserted or legal obligations be enforced, provided the method of procedure adopted for those purposes gives reasonable notice and affords fair opportunity to be heard before the issues are decided.' *Iowa Central Ry. Co.* v. *Iowa,* 160 U.S. 389, 393, 16 S. Ct. 344, 40 L. Ed. 467 (1896)." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 176, 491 A.2d 1084 (1985).

The defendant presented a full day of argument in which he was given ample opportunity to establish a prima facie case for permission to sue the rent receiver. There is no due process violation when the party in interest is given a full hearing. This safeguard is more than adequate for assuring the protection of the constitutional right to legal process. Id.

II

The substance of the defendant's other claim of error, in connection with the denial of his motion for permission to sue the rent receiver, is that the court erred in failing to find that he presented a prima facie case.

It is well established that " '[w]hen a receiver is appointed in a foreclosure action to take charge of the property, he holds it as an arm of the court.' " *Tucker* v. *American Ins. Co.,* 3 Conn. App. 397, 398, 488 A.2d

1278, cert. denied, 196 Conn. 802, 492 A.2d 1239 (1985), quoting *New Haven Savings Bank* v. *General Finance & Mortgage Co.,* 174 Conn. 268, 270, 386 A.2d 230 (1978); *Desiderio* v. *Iadonisi,* 115 Conn. 652, 655, 163 A. 254 (1932). The court will permit a suit against a receiver if the litigant can establish a prima facie case; *New Haven Savings Bank* v. *Tater,* 8 Conn. Sup. 42, 43 (1940); and will grant permission to sue only if the party can show that the receiver had acted beyond his authority. *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 178, 491 A.2d 1084 (1985); *Walsh* v. *Raymond,* 58 Conn. 251, 255, 20 A. 464 (1889).

"A receiver appointed by judicial authority cannot, in the absence of a statute to the contrary, be subjected to suit without the leave of the court whose officer he is, granted in the cause in which he was appointed. . . . He is presumed to be acting according to the will of that court; and to sue him is necessarily to bring in another court to take part in the disposition of the estate which has been put in his charge. The rule that where a court has once acquired jurisdiction over a particular subject-matter, it retains it free from interference by any other court, is that which governs . . . ." *Links* v. *Connecticut River Banking Co.,* 66 Conn. 277, 284, 33 A. 1003 (1895); see also *Tucker* v. *American Ins. Co.,* supra, 399.

This court will not substitute its judgment for that of the trial court which has had the opportunity to weigh the arguments presented by the litigants. See *Gallo* v. *Gallo,* 184 Conn. 36, 38, 440 A.2d 782 (1981); *Munn* v. *Scalera,* 181 Conn. 527, 530–31, 436 A.2d 18 (1980). The record reflects a thorough consideration of the defendant's arguments by the court. We can find no basis for rejecting its decision that the defendant failed to present a prima facie case showing that the receiver had acted beyond her authority.

## III

The defendant's final claim is that the court, *A. Aronson, J.,* erred in awarding fees and expenses to the committees of sale. "The threshold question that must be determined is whether this court has jurisdiction over [this portion of the defendant's] appeal. Although this issue was not raised by the parties, the court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear." *Sasso* v. *Aleshin,* 197 Conn. 87, 89, 495 A.2d 1066 (1985).

General Statutes § 49-25 provides, in relevant part, that "the expense of the sale and appraisal *shall be paid by the plaintiff* and be taxed with costs of the case." (Emphasis added.) Certainly, the plaintiff, Hartford Federal Savings and Loan Association, is a proper party to contest the award of committee fees and expenses. The question we must address, however, is whether the defendant has standing to raise this issue.

This court's subject matter jurisdiction over this issue is dependent upon the defendant's proof of aggrievement. *Local 1303 & 1378* v. *FOIC,* 191 Conn. 173, 177, 463 A.2d 613 (1983). A two-pronged test for determining aggrievement exists. First, " ' "the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." *Nader* v. *Altermatt,* 166 Conn. 43, 51, 347 A.2d 89 [1974].' *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 493, 400 A.2d 726 (1978)." *Local 1303 & 1378* v. *FOIC,* supra, 176.

According to that standard, we hold that the defendant has shown aggrievement sufficient to confer standing. The defendant's claim arises from the granting of the defendant's motion for disbursement of the monies held by the rent receiver. Although the court allowed the defendant to keep the rents, it ordered the receiver to pay the costs and fees of the committees of sale. In effect, the defendant received the net rents collected after deduction for the costs and fees of the committees of sale. Despite the language of General Statutes § 49-25 stating that the plaintiff shall pay the expenses of the sale and appraisal, it is ultimately the defendant who is responsible for such expense. As such, the defendant has shown aggrievement and has standing to raise a claim of error in connection with the trial court's granting of costs and fees to the committees.

The facts pertinent to the merits of the defendant's claim are as follows. On April 20, 1979, the trial court rendered a judgment of foreclosure by sale and appointed Ankerman as a committee of sale. The committee of sale scheduled the sale for June 30, 1979. On June 29, 1979, the afternoon prior to the day scheduled for the sale, the defendant telephoned the committee of sale to say that he had filed an appeal. The appeal was, in fact, filed on July 5, 1979. Subsequently, the trial court refused to ratify the sale because the filing of the defendant's appeal invoked an automatic stay of the judicial proceedings. As previously noted, the judgment of foreclosure by sale was set aside and the case was remanded to the trial court for further proceedings. On remand, the trial court rendered a judgment of strict foreclosure. The committee of sale filed a motion seeking reimbursement for its expenses incurred and fees in connection with the sale, in the amount of $5000 or such other amount as the court may determine to be fair and equitable. The trial court awarded the committee of sale $3392.80 for reimburse-

ment for expenses of $317.80, appraisal fees of $450, plus committee fees of $2625.

The defendant's apparent argument is that the costs and fees of the committees of sale were improper or unreasonable in light of the fact that the sale never materialized because his appeal from the judgment of foreclosure by sale resulted in that judgment being eventually converted into a judgment of strict foreclosure. The issue of whether a committee of sale ought to be compensated for expenses in a situation where a foreclosure sale fails, through no fault of the committee, and ends in strict foreclosure, appears to be one of first impression in this state.

The question this court must address, then, is whether the statutory authorization for an award of expenses and fees to a committee of sale contemplates such an award where the sale is not ratified by the court. The precise language found in General Statutes § 49-25, provides, in pertinent part, that: "When the court . . . is of the opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a [committee of sale] to make the sale and fix a day therefor . . . and how the sale shall be made and advertised; but, in all cases in which such sale is ordered, the court shall appoint three disinterested persons who shall, under oath, appraise the property to be sold and make return of their appraisal to the clerk of the court . . . and the expense *of the sale* and appraisal shall be paid by the plaintiff and be taxed with the costs of the case." (Emphasis added.) Under Connecticut law, a judicial sale becomes complete and creates a legal right to obligations among parties when it is confirmed and ratified by the court.[3] General Statutes §§ 49-24 through

[3] In *Raymond* v. *Gilman,* 111 Conn. 605, 613–14, 151 A. 248 (1930), it was stated that: " 'A judicial sale is one made as a result of judicial proceedings by a [committee of sale] legally appointed by the court for the purpose. . . . The court is the vendor, and the [committee of sale] appointed

49-26; *Matter of Loubier,* 6 Bankr. 298, 302 (D. Conn. 1980). The precise question is whether the use of the phrase ".'of such sale" in General Statutes § 49-25 contemplates only confirmed sales or also includes all sales ordered under a decree of foreclosure by sale but which are not confirmed, through no fault of the committee of sale.

The legislative act involved here does not define the phrase "of such sale." In light of the fact that the phrase is ambiguous as to whether it means any sale by a committee of sale, or only a ratified sale, we must invoke the fundamental rule of construction which mandates that this court ascertain and give effect to the intention of the legislature. *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985); *State* v. *Salz,* 8 Conn. App. 125, 141, 512 A.2d 921, cert. denied, 201 Conn. 807, 515 A.2d 380 (1986). In construing a legislative act, we may consider its history, its language, and the purpose it is designed to serve. *Feldman* v. *Administrator, Unemployment Compensation Act,* 138 Conn. 724, 727, 89 A.2d 210 (1952).

In examining the legislative history of General Statutes § 49-25, we note that the expense of an appraisal made pursuant to a judicial sale was authorized by our statutes as early as 1902. The Revised General Statutes of 1902 § 4142[4] provided that "the expense of such

to make the sale is the mere agent of the court. The sale is not absolute until confirmed. The order of confirmation gives the judicial sanction of the court, and when made it relates back to the time of the sale and cures all defects and irregularities except those founded in want of jurisdiction or fraud. The court has power to confirm the sale, although the terms of the decree may not have been strictly followed. The matter of confirmation rests peculiarly upon the sound discretion of the court, to be judicially exercised in view of all the surrounding facts and circumstances, and in the interest of fairness, justice, and the legal rights of the respective parties.' *Nevada Nickel Syndicate* v. *National Nickel Co.,* 103 Fed. 391, 395 [1900]; 35 Corpus Juris, Judicial Sales, § 73, and cases cited."

[4] General Statutes (1902 Rev.) § 4142 provides: "APPOINTMENT OF SELLER AND DIRECTION OF SALE. APPRAISAL.

appraisal shall be paid by the plaintiff." It is clear that there was no requirement that the reimbursement for appraisal costs be made only in the event of a confirmed sale. In fact, the use of the phrase "of such sale" does not occur until the year 1917, when General Statutes § 4142 was amended to provide that "the expense of such sale and appraisal shall be paid by the plaintiff."[5] Although an examination of the legislative history reveals no insight into the meaning of the phrase "of such sale," it appears that the purpose behind the amendment is to allow reimbursement for all expenses of the committee of sale, including the reimbursement of the costs of the appraisal fees, in fulfilling its obligations under the decree of foreclosure by sale.

The purpose of the legislative authorization is to provide an award to a committee of sale, which is appointed by the court pursuant to a decree of judicial sale, in order that the committee may fulfill its obligations in making the sale and be reimbursed for its efforts. Such purpose would appear to be thwarted if the phrase "of

"When the court in any such proceeding is of the opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a person to make such sale and fix a day therefor, and shall direct whether the property shall be sold as a whole or in parcels, and how such sale shall be made and advertised; but in all cases in which such a sale is ordered, the court shall appoint three disinterested persons who shall, under oath, appraise the property to be sold and make return of their appraisal to the clerk of the court; and the expense of such appraisal shall be paid by the plaintiff and be taxed with the costs of the case."

[5] Connecticut Public Acts 1917, "[House Bill No. 106.] CHAPTER 30. AN ACT CONCERNING FORECLOSURE OF MORTGAGES AND LIENS BY SALE. . . .

"SECTION 1. Section 4142 of the general statutes is amended to read as follows: When the court in any such proceeding is of opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a person to make such sale and fix a day therefor, and shall direct whether the property shall be sold as a whole or in parcels, and how such sale shall be made and advertised; but in all cases in which such sale is ordered, the court shall appoint three disinterested persons who shall, under oath, appraise the property to be sold and make return of their appraisal to the clerk of said court; and the expense of such sale and appraisal shall be paid by the plaintiff and be taxed with the costs of the case."

such sale" is construed to encompass merely ratified sales. In interpreting a statute, application of common sense is not to be excluded. *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150 (1975); *State* v. *Ralston,* 7 Conn. App. 660, 682, 510 A.2d 1346 (1986). A court construing a statute must avoid a consequence which fails to attain the most rational and sensible result that bears directly on the object which the legislature sought to obtain. *Peck* v. *Jacquemin,* 196 Conn. 53, 63–64, 491 A.2d 1043 (1985). If there are two possible interpretations of a statute and one proves unreasonable or produces the possibility of bizarre results, then the more reasonable should be adopted. *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985).

Confirmation by the court of the sale is not a condition precedent to the court's allowance of costs and fees to the committee of sale in connection with its services performed pursuant to the court order of foreclosure by sale. Such an interpretation is in accordance with the purpose of the legislative act which is to compensate the committee of sale for performing its obligations under the court's decree of sale. Even in those cases where the sale is not confirmed, a committee of sale has expended money, time and effort in performing its duties. Any other rule would be harsh and oppressive to the committee of sale, depriving it of just remuneration for proceeding in a manner consistent with the decree. A committee of sale, as an arm of the court, should not have to act at its own peril in undertaking its obligations under a judgment of foreclosure by sale. Absent fraud or fault on the part of a committee of sale, the committee should be compensated for its efforts and reimbursed for its expenses associated with those acts in furtherance of its obligations, whether or not such acts eventually culminate in a completed sale. In this case, the fees and expenses which were allowed by the court were incurred prior to the filing of the

appeal by the defendant. Accordingly, the court did not err in awarding fees and costs to the committee of sale even though the sale was not ratified.[6]

We hold, therefore, that the phrase "of such sale" provided in General Statutes § 49-25 is not limited to ratified sales but also encompasses those authorized acts undertaken in furtherance of completing a judicially-ordered sale.

## IV

In its cross appeal, the committee of sale claims that Judge Aronson erred in awarding fees and expenses which were less than those sought.[7] We are unable to reach the merits of this claim, however, because the committee of sale lacks standing to raise this issue. We must, therefore, dismiss the cross appeal on jurisdictional grounds.

We emphasize the fact that the committee of sale was not a party to this suit.[8] The interests of a committee of sale are ordinarily represented by a party to the suit. *Second National Bank of New Haven* v. *Burtchell,* 166 Conn. 388, 349 A.2d 831 (1974). In this case, however, it appears that the committee of sale was permitted to represent its own interests without objection.[9]

---

[6] Other jurisdictions have allowed some form of compensation to the committee of sale where a sale is set aside for reasons not imputable to the fault of the committee of sale. See 47 Am. Jur. 2d, Judicial Sales § 81 and cases cited therein.

[7] We note that, contrary to the committee of sale's assertion, the fees and expenses awarded were not less than those sought in its motion. The motion sought specific amounts "or [i]n such other sum as the court may determine to be fair and equitable."

[8] Both the receiver of rents, Frances Gionfrido, and the committee of sale, Ankerman, have filed appearances in connection with this appeal. There is no indication in the record, however, that either was a party in the action. As a result of the lack of status as parties, for the purposes of this appeal, we have treated the briefs of both the receiver of rents and the committee of sale as amicus curiae briefs.

[9] An appearance was filed on behalf of Frances Gionfrido, the rent receiver, when this case was before our Supreme Court in *Hartford Fed-*

A committee of sale functions as an arm of the court in a judicial sale. The committee conducting a sale is an agent or representative of the court. 50 C.J.S., Judicial Sales § 12; 47 Am. Jur. 2d, Judicial Sales § 71. It is, therefore, the instrumentality of the court for the specific purposes designated in the court's decree. The function of the committee as an arm of the court raises the issue of standing. As an arm of the court, the committee merely carries out the sale of property as if it were the court. Thus, if a court awards fees and expenses which are less than those sought, a committee is in the paradoxical position of appealing an action of the court which it serves. Absent express authority permitting an appeal by an aggrieved committee, we must conclude that the committee lacks standing to challenge the amount of the court's award through this cross appeal.[10]

The cross appeal is dismissed.

There is no error on the appeal.

In this opinion the other judges concurred.

---

*eral Savings & Loan Assn.* v. *Tucker,* 196 Conn. 172, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 258 (1985): The question of whether the receiver's standing to litigate issues or the appropriateness of appearing in an appeal to which it was not a party was never addressed by the court.

[10] We are aware that this holding leaves a committee, which is given an award in a lesser amount than its claimed fees and expenses, without a mechanism for redress. We believe, however, that if the legislature determines that appellate review of an award to a committee of sale should be available, then the legislature and not this court should fill the appellate void.