### In re Thomas Robert RUBENSTEIN and Elizabeth Elaine Rubenstein, Debtors.

#### Bankruptcy No. 5–88–01107.

United States Bankruptcy Court, D. Connecticut.

Oct. 3, 1989.

**200**

Walter D. Wagoner, Jr., New Haven, Conn., for debtor.

Daniel Meister, East Norwalk, Conn., Chapter 13 Trustee.

Anthony R. DeChello, The Pellegrino Law Firm, New Haven, Conn., for First Constitution Bank.

Matthew E. Frechette, Frechette & Frechette, New Haven, Conn., State Court Committee of Sale.

## MEMORANDUM AND ORDER ON MOTION FOR DECLARATORY JUDGMENT THAT THE AUTOMATIC STAY DOES NOT APPLY OR JUDGMENT GRANTING RELIEF FROM THE AUTOMATIC STAY

ALAN H.W. SHIFF, Bankruptcy Judge.

The State Court Committee of Sale (the "Committee") moves for a declaratory judgment that the automatic stay, 11 U.S.C. § 362(a), does not apply to the commencement of a state court action against the debtors' mortgagee, First Constitution Bank (the "Bank") or, in the alternative, for relief from the stay under Code § 362(d)(1). The Bank objects, contending that the automatic stay is applicable and that there is insufficient cause for relief from the stay or, in the alternative, that an injunction should issue under § 105(a) against the Committee's proposed state court action.

### I.

On May 23, 1988, the Connecticut Superior Court ordered the foreclosure by sale [1] of the debtors' residence, located at 121 Fitch Street, North Haven, in an action brought by the Bank which held a first mortgage.[2] At that time, Matthew E. Frechette, Esq. was appointed to serve as the Committee to sell the residence on July 30, 1988. On July 25, 1988, the state court granted the debtors' motion and ordered the judgment reopened and the sale date extended to September 17, 1988. On September 15, 1988, the court again extended the sale date on the debtors' motion and ordered the property sold on November 5, 1988. On November 3, 1988, the state court extended the sale date a third time on

---

1. Under Connecticut law:

     All liens and mortgages affecting real property may, on the written motion of any party to any suit relating thereto, be foreclosed by a decree of sale instead of a strict foreclosure at the discretion of the court before which the foreclosure proceedings are pending. Conn.Gen.Stat.Ann. § 49–24 (West 1978).

     When the court in any such proceeding is of the opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a person to make the sale and fix a day therefor, and shall direct whether the property shall be sold as a whole or in parcels, and how the sale shall be made and advertised; but, in all cases in which such sale is ordered, the court shall appoint three disinterested persons who shall, under oath, appraise the property to be sold and make return of their appraisal to the clerk of the court. If they cannot agree, an amount agreed upon by a majority may be accepted by the court at its discretion, and the expense of the sale and

appraisal shall be paid by the plaintiff and be taxed with the costs of the case.... Conn.Gen.Stat.Ann. § 49–25 (West Supp.1989).

     In a foreclosure by sale, the court is the vendor and the committee the agent of the court. *New England Bank & Trust Co. v. Loubier (Matter of Loubier)*, 6 B.R. 298, 302 (Bankr.D.Conn. 1980) (quoting *Raymond v. Gilman*, 111 Conn. 605, 613, 151 A. 248 (1930)); *Hartford Fed. Sav. and Loan Ass'n v. Tucker*, 13 Conn.App. 239, 536 A.2d 962 (1988) (quoting *Raymond, supra*, 111 Conn. at 613, 151 A. 248), *cert. denied*, 207 Conn. 805, 540 A.2d 373 (1988). The proceeds of the sale are distributed in accordance with a supplementary judgment. Conn.Gen.Stat.Ann. § 49–27 (West Supp.1989). It is noted that the sale need not go forward for a committee to be entitled to compensation. *Tucker, supra,* 13 Conn.App. 239, 536 A.2d 962.

2. *First Constitution Bank f/k/a First Federal Bank of Connecticut v. Thomas Rubenstein, et al.*, No. CV–88–0268812–S (Conn.Super.Ct., J.D. of New Haven, May 23, 1988).

the debtors' motion and ordered the property sold on December 10, 1988. On December 9, 1988, the debtors filed a petition under chapter 13 of the Bankruptcy Code.

The Committee seeks a declaratory judgment that the automatic stay does not apply to the commencement of a state court action by it against the Bank for fees of $4,000.00, representing forty hours of services, and expenses of $2,639.56, including $750.00 for appraisers [3] incurred in an attempt to sell the property. The Committee argues that under state law the Bank is liable for the costs of the aborted sales and that he seeks only to collect on the debt owed by the Bank, rather than on any obligation of the debtor. By that rationale, the Committee contends that the automatic stay does not apply, but if it does, he is entitled to relief from the stay for cause under § 362(d)(1).[4]

The Bank contends that the automatic stay bars actions by the Committee against it because, under state law and its mortgage, the debtor is ultimately liable for the Bank's costs of foreclosure;[5] that a judgment against it in state court will be binding upon the debtor in this court when the Bank files an application under Code § 506(b) to recover, *inter alia*, the committee fees and costs it has to pay under that state court judgment; and that there is insufficient cause for relief from the stay. The Bank argues in the alternative that an injunction should issue pursuant to this court's injunctive powers under § 105(a).[6]

## II.

The principal issue is whether the automatic stay protects the Bank. Code § 362(a) provides in relevant part:

[A] petition filed under section 301 ... of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial ... proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. . . .

In general, the automatic stay does not apply to proceedings against non-debtors. *Teachers Ins. and Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir.1986); *Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 4 (1st Cir.1983), *cert. dismissed*, 463 U.S. 1247, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983); *Ripley v. Mulroy*, 80 B.R. 17, 19 (E.D.N.Y.1987); *Plessey Precision Metals, Inc. v. Metal Center, Inc. (In re Metal Center, Inc.)*, 31 B.R. 458, 462 (Bankr.D. Conn.1983). Where, however, there is such an identity between a debtor and a non-debtor that a judgment against the non-debtor would be binding upon the debtor, the debtor's protection must be extended to enjoin litigation against the nondebtor.

---

**3.** The three appraisers, a real estate expert and two attorneys as to whom there has been no showing of real estate expertise, each charged $250.00. The value of appraisals made by the non-experts is unclear. It has been the experience of this court that the appraisals by the non-real estate experts never differ from that of the expert.

The remainder of the expenses were for advertising and signs. The Committee spent approximately sixteen hours in preparation for the first scheduled sale and approximately eight hours for each of the other three.

**4.** Code § 362(d) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

**5.** Connecticut General Statutes § 49-7 provides:

Any agreement contained ... in any mortgage, to pay costs, expenses or attorneys' fees ... incurred by the holder of that ... mortgage ... in any foreclosure of the mortgage ... is valid, but shall be construed as an agreement for fair compensation rather than as a penalty, and the court may determine the amounts to be allowed for those expenses and attorneys' fees, even though the agreement may specify a larger sum.

**6.** Code § 105(a) provides in part that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

*A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994, 999 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *In re Metal Center, Inc., supra*, 31 B.R. at 462 (Bankr.D.Conn.). *See also S. I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (Matter of S. I. Acquisition, Inc.)*, 817 F.2d 1142, 1147–48 (5th Cir.1987).

■ A judgment is binding upon a third person who is liable to the judgment debtor when that third person has notice of and an opportunity to defend against the cause of action. *In re Metal Center, Inc., supra*, 31 B.R. at 462–63 (Bankr.D.Conn.). Bankruptcy alters that result.

■ Following the logic that the automatic stay is intended

> to bar litigation against the debtor and the debtor's estate to collect prepetition debts, and armed with the assumption that the law would not permit an indirect result which was expressly barred, a debtor, on notice of an action by his creditor ... [against a person to whom he is liable], might justifiably decline to join that litigation on the basis that the automatic stay must be read to protect him and his estate from being drawn into litigation or from being bound by the results thereof. Since he cannot be compelled to appear in nonbankruptcy court to defend his creditor's or guarantor's claim, absent relief from the automatic stay, principles of law, which might otherwise bind the debtor, are of no effect in a bankruptcy context.

*Id.* at 463. Accordingly, I conclude that the debtor would not be bound by any judgment that the Committee might obtain against the Bank in state court and that therefore the Bank is not protected by the automatic stay.

The Bank argues that even if it is not protected by the automatic stay, the Committee nonetheless should be restrained under § 105(a) from asserting its claim against the Bank in state court to eliminate an alleged conflict between state and federal courts over committee fees and costs. The Bank's concern is focused on the possibility that a state court might require it to pay larger fees and expenses to the Committee than are allowed by the bankruptcy court. I conclude, however, for the reasons that follow, that there is no state-federal conflict and that the Bank's apprehension, although understandable, is an insufficient basis for imposing a § 105(a) injunction upon the Committee.

■ In determining the amount of allowable fees and costs, state and bankruptcy courts are bound by different criteria. State "courts may rely on their general knowledge of what has occurred at the proceeding before them to supply evidence in support of an award of attorney's fees." *Bizzoco v. Chinitz*, 193 Conn. 304, 310, 476 A.2d 572 (1984). *See also Piantedosi v. Floridia*, 186 Conn. 275, 279, 440 A.2d 977 (1982); *Ottaviani v. Pechi*, 16 Conn.App. 705, 548 A.2d 1354 (1988). State courts may also seek guidance from statutes such as Connecticut General Statutes § 42–150aa(b).[7] *See Matter of Salisbury*, 58 B.R. 635, 640 (Bankr.D.Conn.1985); *Piantedosi, supra*, 186 Conn. at 279–80, 440 A.2d 977.

Under § 506(b),[8] which governs the allowance of fees and costs claimed against a bankruptcy estate by an over secured creditor under an agreement, applications must state in detail the time spent and the nature of each discrete task performed, so that the bankruptcy court can assess the reasonableness of requested fees and costs.

---

7. Connecticut General Statutes § 42–150aa(b) provides:

If a lawsuit in which money damages are claimed is commenced by an attorney who is not a salaried employee of the holder of a contract or lease subject to the provisions of this section, such holder may receive or collect attorney's fees, if not otherwise prohibited by law, of not more than fifteen per cent of the amount of any judgment which is entered.

8. Code § 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

*In re S.T.N. Enter., Inc.,* 70 B.R. 823, 831–35 (Bankr.D.Vt.1987); Bankruptcy Rule 2016(a); Local Rule of Bankruptcy Procedure 25.[9] Further,

[t]here is a significant difference between what an attorney may do for a creditor/client before and after bankruptcy. Before bankruptcy, legal services are only confined by the scope of activity permitted by the loan agreement in the context of nonbankruptcy law. After bankruptcy, a whole new set of restrictions and considerations are added. ... "[I]t is inherently unreasonable to ask a debtor to reimburse attorneys' fees incurred by a creditor that are not cost-justified either by the economics of the situation or necessary to preservation of the creditor's interest in light of the legal issues involved."

*In re Wonder Corp. of Am.,* 72 B.R. 580, 588 (Bankr.D.Conn.1987) (quoting *Matter of Nicfur–Cruz Realty Corp.,* 50 B.R. 162, 169 (Bankr.S.D.N.Y.1985)), *aff'd,* 82 B.R. 186 (D.Conn.1988). Since the state and bankruptcy courts are bound by different criteria, different conclusions would not be the result of an inconsistant application of a single standard.

Section 105(a) gives bankruptcy courts the equitable power necessary to assure that reorganization proceedings are conducted in an orderly manner, *In re Baldwin–United Corp. Litig.,* 765 F.2d 343, 348 (2d. Cir.1985); *LTV Steel Co., Inc. v. Board of Educ. (In re Chateaugay Corp.),* 93 B.R. 26, 29 (S.D.N.Y.1988), including the authority under appropriate circumstances to stay parties from proceeding in state court. *See MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 837 F.2d 89, 93–94 (2d Cir. 1988); *In re A. H. Robins, Inc., supra,* 788 F.2d at 1002–03 (4th Cir.) (§ 105(a) empowers the bankruptcy court to enjoin a party from proceeding against a nondebtor in state court); *Garrity v. Leffler (In re Neuman),* 71 B.R. 567, 571 (S.D.N.Y.1987). To issue such an injunction, the bankruptcy court must at least be satisfied that it is necessary to prevent the impairment of its jurisdiction or interference with a debtor's ability to reorganize. *See In re A. H. Robins Co., Inc., supra,* 788 F.2d at 1003 (4th Cir.); *In re Chateaugay Corp., supra,* 93 B.R. at 29 (S.D.N.Y.); *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 25 B.R. 1018, 1020 (D.N.M. 1982).[10] No such conclusion is appropriate

**9.** Local Rule of Bankruptcy Procedure 25(a) provides in part:

(a) Unless otherwise ordered by the Court, all applications for compensation to attorneys ... for services rendered or reimbursement of necessary expenses shall, in addition to the requirements set forth in the Bankruptcy Code and Bankruptcy Rule 2016(a), contain the following information:

....

(2) In concise form, a general narrative statement of the nature of the services provided, including the results obtained, the size of the estate, total amount of compensation sought and any other matters which will assist the Court in determining the reasonable value of such services;

(3) A time sheet setting forth in typed format, based upon records prepared contemporaneously with the services rendered:

a. the dates the services were rendered;

b. a description of services in sufficient detail to enable the Court to find that such services were actual and necessary;

c. the time spent rendering each service broken down into tenths of an hour;

d. the identity of the person or persons rendering such services;

e. the normal billing rate for each of said persons providing services and a total of the amount of time spent by each person; and

f. the total compensation sought by each person providing the services;

....

(5) In all applications for reimbursement of expenses an itemization as 'to purpose, amount and date incurred, accompanied by an invoice, receipt or other documentation for each item for which reimbursement is sought. The general costs of doing business, such as regular postage, ordinary telephone expenses and travel to and from court, will not be allowed....

**10.** Courts in the Second Circuit have recently found that the "usual grounds for injunctive relief such as irreparable injury need not be shown in a proceeding for an injunction under section 105(a)." *In re Chateaugay Corp., supra,* 93 B.R. at 29 (S.D.N.Y.). *See also In re Neuman, supra,* 71 B.R. at 571 (S.D.N.Y.); *C & J Clark Am., Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.),* 92 B.R. 87, 92 (Bankr.S.D.N.Y.1988); *Johns–Manville Corp. v. Colorado Ins. Guar. Ass'n (In re Johns–Manville Corp.),* 91 B.R. 225, 227–28 (Bankr.S.D.N.Y.1988). *But see, Lower*

here because, as noted, the debtor would not be bound by a state court judgment in favor of the Committee against the Bank.

### III.

For the foregoing reasons, a declaratory judgment may enter in favor of the Committee that the automatic stay under Code § 362(a) does not prevent it from seeking fees and costs from the Bank in state court, an injunction of such an action is not appropriate under § 105(a), and IT IS SO ORDERED.[11]

*Brule Constr. Co. v. Sheesley's Plumbing & Heating Co., Inc.,* 84 B.R. 638, 644–45 (D.S.D.1988); *Glassman v. Elec. Theatre Restaurants Corp. (Matter of Elec. Theatre Restaurants Corp.,* 53 B.R. 458, 462 (N.D.Ohio 1985).

11. From the foregoing, it is clear that banks would be well advised to defend state court actions by committees seeking an award of fees and costs rather than assume that they will be passed on to a debtor's bankruptcy estate if a bankruptcy case is commenced before title passes.