******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SEAPORT CAPITAL PARTNERS, LLC
*v.* SHERI SPEER

SEAPORT CAPITAL PARTNERS, LLC
*v.* SHERI SPEAR

SEAPORT CAPITAL PARTNERS, LLC
*v.* SHERI SPEER ET AL.

SEAPORT CAPITAL PARTNERS, LLC *v.* 76–78
TRUMAN STREET, LLC, ET AL.
(AC 39315)

DiPentima, C. J., and Lavine and Flynn, Js.

*Syllabus*

The plaintiff in error, B, who had been appointed the receiver of rents in nine foreclosure actions brought by the defendant in error, S Co., against the defendant in error property owner, S, filed a writ of error, claiming, inter alia, that the trial court lacked subject matter jurisdiction over the foreclosure actions, and that the trial court had improperly granted S Co.'s motions for order to have B pay into court the income that he had documented in his receiver reports. After the trial court had denied B's motion to approve the receiver reports that he had filed, the court provided B with an opportunity to file new reports for purposes of a hearing, at which the court would determine the sufficiency of those reports and reconsider the order of payment. The court denied B's motions to reargue the order for payment to the court and found that the receiver reports B subsequently filed were not satisfactory. B then filed the writ of error in the Supreme Court, which transferred the matter to this court. *Held*:

1. B could not prevail on his claim that because S Co. did not fully fund the loans on eight of the nine properties, S Co. lacked standing to commence the foreclosure actions, which thereby deprived the trial court of subject matter jurisdiction and rendered the receivership void; S Co., which presented the note for each of the nine mortgages, was entitled to a rebuttable presumption that it had standing as the holder of the notes to bring the underlying foreclosure actions, and B did not present any evidence to rebut that presumption, as B's conclusory statement that the loans were not fully funded was insufficient to rebut that presumption.

2. The trial court properly granted S Co.'s motions for order of payment: that court's findings that B, as receiver, was required to pay income that he had collected on the nine properties, that certain capital contributions made by S that supplemented the rental incomes should be included in the determination of the amount of income collected, and concerning the total rent collected with respect to each property were supported by the evidence in the record and were not clearly erroneous, and despite B's claim that the amount of money he collected was significantly less than what he was ordered to pay, the trial court's orders were based on the receiver reports B filed, and it was his burden either to submit accurate reports or subsequently to correct them; moreover, even if, as B claimed, S was collecting rents and documenting the amounts received, that did not absolve B of his obligation as receiver to collect and account for the rents for the properties, and B's claim that the doctrine of judicial estoppel barred S Co. from claiming that B owed the funds that allegedly were collected by S was unavailing, as S Co. never took a clearly inconsistent position in an earlier proceeding, which never took place, and, therefore, the doctrine of judicial estoppel did not apply.

3. The trial court did not abuse its discretion in denying B's motions to reargue, as he failed to demonstrate that the court misapprehended the facts when granting S Co.'s motions for order of payment; the funds B was ordered to pay were admitted by him in the receiver reports, which B had multiple opportunities to correct, and the court stated that it

would reconsider the order for payment if satisfactory reports were submitted by B, who failed to file adequate receiver reports.

Argued April 17—officially released October 10, 2017

*Procedural History*

Writ of error from the orders of the Superior Court in the judicial district of New London, *Hon. Joseph Q. Koletsky*, judge trial referee, granting the motions filed by the defendant in error Seaport Capital Partners, LLC, for order of payment of certain rents and denying the plaintiff in error's motions to reargue, brought to the Supreme Court, which transferred the matter to this court; thereafter, the court, *Hon. Joseph Q. Koletsky*, judge trial referee, issued an articulation of its decision. *Writ of error dismissed.*

*Edward Bona*, self-represented, the plaintiff in error.

*Lloyd L. Langhammer*, with whom was *Donna R. Skaats*, for the defendant in error (Seaport Capital Partners, LLC).

*Opinion*

FLYNN, J. The plaintiff in error, Edward Bona,[1] brings this writ of error to challenge the decisions of the trial court granting the motions of the defendant in error, Seaport Capital Partners, LLC (Seaport), for order of payment, and denying Bona's motions to reargue the order of payment. Bona claims that the court (1) lacked subject matter jurisdiction, (2) improperly granted Seaport's motions for order of payment, and (3) improperly denied Bona's motions to reargue. We disagree with Bona and, accordingly, dismiss the writ of error.

The following facts and procedural history are relevant to our review. On January 25, 2012, Seaport filed nine foreclosure actions against the defendant in error, Sheri Speer,[2] as to rental properties that she owned in Norwich and New London. In all nine actions, Seaport filed motions for the appointment of a receiver of rents, to which Speer objected. On February 21, 2012, the court, *Devine, J.*, granted Seaport's motions and appointed Bona[3] as receiver of rents by agreement,[4] with no bond to be posted.[5] On June 7, 2012, Seaport filed motions for order requiring Bona to file receiver reports and to account for and turn over all rents collected on the nine properties. Judge Devine granted the motions and instructed "Speer and/or her agents . . . to turn over any money collected since the date of the order for receiver was granted to today's date . . . . Attorney Bona . . . is to submit quarterly reports for each property accounting for money received and expenditures. Income received from each property is to be used for the debts of that property only."

On December 21, 2012, Bona filed his first receiver report in all nine actions.[6] Shortly thereafter, in March, 2013, Bona's duties as to two of the Norwich properties terminated because the properties were purchased in tax lien foreclosure actions. After Bona indicated that he did not wish to continue as the receiver on the remaining properties, Seaport filed motions to substitute Robert K. Jones as the receiver of rents, and the court, *Cosgrove, J.*, granted the motions on May 6, 2013. In its order, the court ordered Bona to file a final receiver report for each property, including the two Norwich properties that had been sold, by May 13, 2013. On May 13, 2013, Bona filed a final receiver report in all nine actions. In June, 2013, he filed additional receiver reports that accounted for February, 2012 to April, 2013.

In May, 2014, Bona filed motions asking the court to accept his receiver reports, to which Seaport objected. Subsequently, on December 8, 2015, Seaport filed motions in each of the nine actions for orders of payment, requesting the court to compel Bona to pay into court the amount of income he claimed in his receiver reports had been received for each property. In total, Seaport requested $180,044.32. Bona objected to

these motions.

The court, *Hon. Joseph Q. Koletsky*, judge trial referee, held a hearing on December 16, 2015, regarding Bona's motions to accept his receiver reports and Seaport's motions for order of payment. At the hearing, Bona argued that the court should not grant the motions for order of payment because he did not have the money requested. Bona claimed that anything he had collected, he deposited and handed over to Jones. Moreover, Bona admitted that Speer also was collecting rent from the properties,[7] but he claimed that Speer gave him any payments that she had collected. The court informed Bona that the motions for order of payment were for funds that had not been accounted for, to which Bona responded that he did not have the funds.

Judge Koletsky granted Seaport's motions for order of payment and set a due date of April 15, 2016. The amount due was $180,094.32,[8] plus any rents that Bona collected from May, 2013, and June, 2013, but had not previously turned over to Jones. The amount due included both rent received and capital contributions made by Speer, which, according to the receiver reports, supplemented the rental income.[9]

Moreover, the court denied Bona's motions to approve his receiver reports. According to the court, although Bona admitted in the receiver reports to receiving money, the reports did not give a satisfactory explanation as to where the money went. The court further stated that, should Bona file a complete and accurate accounting by February 11, 2016, it would hold a hearing to determine the sufficiency of the receiver report and, upon request, reconsider the order for payment into court.

On December 31, 2015, Bona filed motions in all nine actions to reargue the December 16, 2015 orders. On January 19, 2016, Judge Koletsky denied the motions to reargue, stating that "[u]nless and until the court has received from Attorney Bona the detailed account of all the monies received by him as receiver and where that money went (with copies of checks and any other documentation justifying all expenditures) the court does not intend to modify the potentially ruinous order to reimburse the court. The apparent failure of Attorney Bona to comprehend the serious difficulty he is facing is puzzling, and there is little more the court can do but to emphasize that there is no more basic duty for a receiver than to completely and honestly account for the funds which the receiver obtained as an officer of the Superior Court."

In February, 2016, Bona filed receiver reports accounting for the nine properties from February, 2012 to May, 2013, the duration of his receivership. In these reports, Bona conceded that he did not begin to collect rents until September, 2012, and that prior to that date,

Speer was collecting rents and documenting any expenditures. Moreover, Bona conceded that Speer continued to do so after September, 2012.

Judge Koletsky held a hearing on February 16, 2016, at which he determined that Bona still had not filed satisfactory receiver reports.[10] Judge Koletsky thus ordered Bona to file new reports in three weeks and reiterated its prior orders for Bona to pay the funds to the court. Bona did not file additional receiver reports.

On March 16, 2016, Bona filed this writ of error in the Supreme Court concerning his appointment as receiver of rents and the orders requiring him to pay into court $180,094.32. Pursuant to Practice Book § 65-1, our Supreme Court transferred this writ of error to this court on June 16, 2016. Additional facts will be set forth as necessary.

I

Bona first claims that the court lacked subject matter jurisdiction, and, therefore, the receivership was void. Specifically, he argues that Seaport did not fully fund the mortgages on eight of the nine properties, and, as a result, Seaport did not have standing to commence the underlying foreclosure actions. Consequently, Bona argues, the court did not have subject matter jurisdiction over the underlying foreclosure actions and thus did not have the authority to name him as receiver of rents. We disagree.

We begin our analysis with the applicable standard of review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law [over which] . . . our review is plenary . . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . .

"Our Supreme Court has held that a holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under [General Statutes] § 49-17[11] . . . . The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the [party asserting lack of standing] to set up and prove the facts which limit or change the [note holder's] rights. . . . Put differently, [a] holder of a note has standing to bring an action for strict foreclosure pursuant to § 49-17." (Citations omitted; footnote added; internal quotation marks omitted.) *Mengwall* v. *Rutkowski*, 152 Conn. App. 459, 462–63, 102 A.3d 710 (2014).

In the present case, Seaport presented the note for each of the nine mortgages. As the holder of the note,

Seaport was entitled to a rebuttable presumption that it had standing to commence the underlying foreclosure actions. Bona has not presented any evidence to rebut this presumption. Rather, Bona merely claims that Seaport did not fully fund the mortgage loans on eight of the nine properties, and, therefore, the court lacked subject matter jurisdiction. Such conclusory statements are not sufficient to rebut the presumption that Seaport was the holder of the note and, consequently, owner of the debt.[12] Accordingly, we conclude that the court had subject matter jurisdiction over the underlying foreclosure actions, and, therefore, the receivership was not void.

## II

Bona next claims that the court improperly granted Seaport's motions for order of payment of income from the nine properties. Specifically, Bona argues that the record clearly indicates that Speer was collecting rents and documenting how the income was spent on the nine properties. Bona further argues that the majority of the funds were deposited in Speer's account, and any funds collected did not equal the $180,094.32 ordered.[13] Moreover, Bona argues that the doctrine of judicial estoppel barred Seaport from seeking the payment of income that it had alleged Speer collected. Thus, Bona argues that the court improperly granted Seaport's motions ordering Bona to pay $180,094.32 to the court.

We disagree with Bona. As we discuss subsequently in this opinion, Bona, as receiver, had a duty to collect the rents on the nine properties. This duty was not one which Bona could delegate to others. Moreover, the transactions involved in this matter were complicated by contributions made by Speer, which arguably were not rents, but for which Bona, in his receiver reports, indicated that Speer was reimbursed from the rents collected. None of the receiver reports indicates the amounts reimbursed to Speer and whether any contributions remained unreimbursed at the time of the orders of payment. Furthermore, although the receiver reports indicate that money was spent on maintenance and improvements to the properties, Bona could not authorize any repairs to the properties without the permission of the court, which was not granted. Consequently, we are not persuaded by Bona's arguments.

## A

Bona first claims that the court improperly granted Seaport's motions for order of payment because Bona never collected the income. Specifically, Bona argues that the amount collected was significantly less than the $180,094.32 that he was ordered to pay. Bona further argues that Speer, not Bona, was collecting the rents and documenting how the money was spent on the nine properties, and Bona merely generated the reports based on the information given to him by Speer.

Bona, therefore, challenges the validity of the court's conclusion that he, as receiver, was required to pay income that he had collected on the nine properties. The issue raised by Bona, that he never collected the money, involves the factual basis upon which the court rendered its decision. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 467, 704 A.2d 222 (1997).

The record supports the court's findings. "[W]hen a receiver is appointed in a foreclosure action to take charge of the property, he holds it as an arm of the court." (Internal quotation marks omitted.) *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 13 Conn. App. 239, 243, 536 A.2d 962, cert. denied, 207 Conn. 805, 540 A.2d 373 (1988). Bona, as receiver of rent, was obligated to collect rent on the nine properties subject to the foreclosure actions. Such income was then to be turned over to the court. Bona, however, did not collect all of the rents and did not turn over the income. As a result, Seaport asked the court to order payment. Seaport filed nine separate motions, one in each of the foreclosure actions. In each motion, Seaport provided a numerical value that it claimed as the total income received for the named property during Bona's receivership, which spanned from February, 2012 to May, 2013. In support of the stated income, Seaport cited to receiver reports filed by Bona, as well as testimony and additional evidence when necessary.

At the outset, we first must address the capital contributions made by Speer to the properties that were the subject of Docket No. CV-12-6012072-S, Docket No. CV-12-6012076-S, Docket No. CV-12-6012077-S, Docket No. CV-12-6012078-S, and Docket No. CV-12-6012079-S. It appears that both Seaport and the court included as income these capital contributions that supplemented the rental incomes. Although the question may exist as to whether such capital contributions should have been part of the $180,094.32, Bona indicated in his reports that Speer was reimbursed for her contributions from the rents collected. Moreover, he did not provide any account as to how much of the reimbursements were provided from the rents that he was obligated to collect and remit to the court. Accordingly, we cannot conclude that the court's finding as to the inclusion of Speer's contributions in the income collected was clearly erroneous.

Turning now to the court's findings on the amount owed by Bona to the court, in Docket No. CV-12-6012072-S,[14] Seaport claimed a total income of $11,903.47 for the property. To support its claim, Sea-

port cited to two different receiver reports filed by Bona, a report dated December 10, 2012, which states a total rental income of $4000, and a report dated June 21, 2013, which states a contribution of $7903.47 by Speer, totaling $11,903.47.[15]

In Docket No. CV-12-6012073-S, Seaport claimed a total income of $25,323 for the property. To support its claim, Seaport cited to a receiver report filed by Bona on October 15, 2013. The October 15, 2013 receiver report provides that a deposit of $2200 is to be delivered to the court, thus accounting for Seaport's claim that the total income collected included a $2200 forfeited security deposit. The receiver report records that $18,644 in rent payments was received, $200 of which was paid directly by the tenants and $18,444 of which was paid by third parties.

In response to that report, Seaport claimed that the total rent collected was $22,178, stating that $3534 in rent received was not disclosed in the October 15, 2013 receiver report. It claimed that the rent collected from third parties totaled $22,923 because testimony on May 20, 2013, by the third parties provided that they had paid $22,923 on behalf of the tenants. It is Bona's burden to provide us with a record, and he has failed to provide this court with the transcript of the third parties' purported testimony. See Practice Book § 61-10 (a); *Chester* v. *Manis*, 150 Conn. App. 57, 61, 89 A.3d 1034 (2014) ("[i]t is incumbent upon the appellant to take the necessary steps to sustain [his] burden of providing an adequate record for appellate review" [internal quotation marks omitted]). As discussed subsequently in this opinion, although the court did not provide a memorandum of decision, it did state that it completed the calculations for the motions for order of payment. This court gives great deference to the findings of the trial court, whose function it is to weigh and interpret the evidence before it. *Lyme Land Conservation Trust, Inc.* v. *Platner*, 325 Conn. 737, 755, 159 A.3d 666 (2017). Nothing in the record that Bona has provided to us on appeal supports the conclusion that the court erroneously found that the total rent collected from third parties was $22,923, which, with the $200 also collected from the tenants, provides for a total collected rent of $23,123. Consequently, we shall not disturb the court's findings as to Docket No. CV-12-6012073-S. Therefore, the court's finding that the total income collected on the property was $25,323 was not erroneous.

In Docket No. CV-12-6012074-S, Seaport claimed a total income of $2750 for the property. To support its claim, Seaport cited to a receiver report filed by Bona, in which Bona recorded that the rent received was $2750.

In Docket No. CV-12-6012075-S, Seaport claimed a total income of $17,950 for the property. To support its claim, Seaport cited to a receiver report filed on June 24, 2013, in which Bona recorded that the rent received

for the property was $17,950.

In Docket No. CV-12-6012076-S, Seaport claimed a total income of $21,672.44. To support its claim, Seaport cited to a receiver report filed on June 24, 2013, in which Bona recorded that he received $12,924.97 in rent and that Speer contributed $8747.47 to the property, totaling $21,672.44 in income.

In Docket No. CV-12-6012077-S, Seaport claimed a total income of $22,347.06. To support its claim, Seaport cited to a receiver report filed on June 11, 2013, in which Bona recorded that the rent received for the property was $16,325 and that Speer contributed $6912.06 to the property.[16]

In Docket No. CV-12-6012078-S, Seaport claimed a total income of $26,647.12. To support its claim, Seaport cited to the receiver report filed on June 11, 2013, in which Bona recorded that he received $19,775 in rent and that Speer contributed $6872.12 to the property, totaling $26,647.12 in income.

In Docket No. CV-12-6012079-S, Seaport claimed a total income of $23,231.23. To support its claim, Seaport cited to a receiver report filed on June 11, 2013, in which Bona recorded that he received $19,074 in rent and that Speer contributed $4157.23, totaling $23,231.23 in income.

In Docket No. CV-12-6012080-S, Seaport claimed a total income of $28,220. To support its claim, Seaport cited to a receiver report filed on June 24, 2013, in which Bona recorded that he received $28,220 in rent.

Nearly every numerical value provided by Seaport as the income collected and subsequently ordered by the court for Bona to pay is supported by a receiver report that Bona filed with the court. Although the court did not provide an accompanying memorandum of decision in its order, in response to Bona's subsequent motion for articulation it stated that it had calculated the rents due during the period of Bona's receivership and thus determined, independent of Seaport's claims, the amount to be paid by Bona. The total income stated in the court's nine orders equals $180,094.32.

Bona's claim that the properties did not generate this amount of income is without merit. Bona provided the income collected to the court through the receiver reports that he filed. If the stated income did not accurately reflect the income collected, Bona could have corrected the amounts in one of the numerous opportunities that he had to file new, satisfactory reports. His failure to do so does not excuse him from liability for the income that he reported. See *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 196 Conn. 172, 178, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S. Ct. 250, 88 L. Ed. 2d 259 (1985).

Moreover, Bona's claim that he did not collect much

of the money, but rather that Speer did, is not persuasive because it was the duty of the receiver to collect the rents for the properties for which he was receiver. Even if Speer were collecting rents and documenting the amounts received, this does not absolve Bona of his obligations as receiver. As receiver, Bona, not Speer, was responsible for the collecting and accounting of rents. Therefore, the evidence and pleadings in the whole record do not support the conclusion that the court's finding of facts was clearly erroneous, and, accordingly, we conclude that the court properly granted the motions for order of payment.

B

Bona next claims that the court improperly granted Seaport's motions for order of payment because the doctrine of judicial estoppel barred Seaport from claiming that Bona owed funds that Seaport also alleged Speer had collected. As a result, Bona claims that the court abused its discretion in granting the motions.

"[J]udicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding. . . . [J]udicial estoppel serves interests different from those served by equitable estoppel, which is designed to ensure fairness in the relationship between parties. . . . The courts invoke judicial estoppel as a means to preserve the sanctity of the oath or to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Cookson Group, PLC*, 149 Conn. App. 571, 578, 89 A.3d 447, cert. denied, 312 Conn. 914, 93 A.3d 597 (2014).

The doctrine of judicial estoppel does not apply to the circumstances of the present case. Seaport never took a position that was clearly inconsistent with one in an earlier proceeding. In fact, there was no earlier proceeding. Therefore, judicial estoppel does not apply.

III

Bona further claims that the court improperly denied his motions to reargue the court's orders for payment. Specifically, Bona argues that the court abused its discretion when it denied his motions to reargue because the total sum that the court had ordered Bona to pay was not collected by Bona, nor was it produced by the properties. We disagree.

"The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did. . . .

"The purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." *Mengwall* v. *Rutkowski*, supra, 152 Conn. App. 466.

Our review of the record reveals that the court did not abuse its discretion in denying Bona's motions to reargue. In support of his motions to reargue, Bona claimed that the court "ordered payments to be made, based solely on undocumented conjecture by [Seaport], of amounts of money that no one alleges or admits ever existed or were collected. No reports to date reflect any such sums as claimed by [Seaport] in the aggregate in the nine [foreclosure] actions." The funds ordered to be paid by Bona, however, were admitted by him in his receiver reports, and the total income listed in those reports totaled the amount that Bona was ordered to pay. Had the income reported in the receiver reports been incorrect, Bona could have corrected the numerical values in the multiple opportunities given to him to present satisfactory receiver reports. In fact, even when the court granted Seaport's motions for order of payment, it again gave Bona the opportunity to submit complete and accurate reports and informed Bona that, if such reports were satisfactory, the court, upon request, would consider revisiting the orders for payment. Bona, however, failed to file adequate receiver reports.[17] In turn, Bona has failed to demonstrate that the court misapprehended the facts when granting Seaport's motions to order payment of funds. We therefore conclude that the court did not abuse its discretion in denying Bona's motions to reargue.[18]

The writ of error is dismissed.

In this opinion the other judges concurred.

[1] Bona, who is a member of the bar of this state, appeared self-represented in bringing this writ of error.

[2] On the basis of the underlying loan documents, various other parties were also named as defendants in the foreclosure actions. Because Speer was named in all foreclosure actions, for purposes of simplicity we refer to her alone. Furthermore, although one action filed used the spelling, "Spear," in this opinion we use the spelling that appears more consistently throughout the record.

[3] At the time of his receivership appointment, Bona represented Speer. Shortly after being appointed receiver, Bona withdrew as Speer's attorney.

[4] Speer subsequently appealed from the orders appointing Bona as the receiver of rents. Seaport filed a motion to dismiss the appeal for lack of final judgment, which this court granted on May 16, 2012. On July 25, 2012, Speer again appealed various orders, and again this court granted Seaport's motion to dismiss the appeal for lack of final judgment.

[5] The orders granting Seaport's motions stated: "By agreement Attorney Bona is appointed as receiver of rents, with no bond to be posted. Parties agree to exchange financial information and proof of insurance within two weeks."

[6] Although filed in all nine actions, the receiver report did not contain

any information regarding one of the New London properties filed under Docket No. CV-12-6012080-S.

[7] Seaport further complicated this already complicated matter by sending notice to the tenants of the foreclosed properties to pay it, not Bona, the rent due. This demand was revoked, however, and the tenants were notified before any payments were made to Seaport.

[8] In the foreclosure action filed under Docket No. CV-12-6012080, Seaport's motion for order requested $28,220 and the court ordered Bona to pay $28,270.

[9] Specifically, Bona recorded in his receiver reports that "[t]he owner of the properties made capital contributions to supplement rental incomes, if any, sustaining many of the units to ensure code compliance, habitability and taxes, etc. The estimated capital contributions of the property owner toward all nine properties [exceed] $55,000 . . . . The owner was reimbursed when possible from the rent collections."

[10] The February, 2016 reports best illustrate the problem with which the court was faced. Although Bona reported the rents received, he did not, in many cases, receive such rent. Moreover, although the reports list expenses for items such as supplies and labor, and include copies of documents such as receipts and bills, the reports lack any explanation for such documents, and the court had not authorized any expenditures for the maintenance and improvement of the properties.

[11] General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

[12] We note in passing that Bona incorrectly relies on General Statutes § 49-3, which applies to mortgages securing future advancements of money for construction or repair of buildings or improvements. Nothing in the record indicates that the loans granted to Speer were such open-ended construction loans. Moreover, § 49-3 does not require that a loan be fully funded for the holder of a note to have standing to foreclose, as argued by Bona.

[13] At the December 16, 2015 hearing, Bona claimed that Speer turned over any rents that she had collected on the nine properties. His appellate brief, however, states that "the vast majority of the funds collected were in fact deposited into . . . Speer's bank account."

[14] Although the receiver reports were not in the appendices of either brief, we were able to access all reports filed by Bona through the Superior Court electronic filing system.

[15] A discrepancy between the two reports exists, for the June 21, 2013 report states that the total rent received was $3000, not $4000. The June 21, 2013 report, however, does not provide an explanation for this discrepancy and does not provide documentation as to the $3000, whereas the December 10, 2012 report provides an attached accounting that records a rental income of $4000 for the property. As Bona has not proven, or even suggested, that the rental income was $3000 rather than $4000, we shall follow the December 10, 2012 receiver report stating $4000, as the court did.

[16] The total of $16,325 and $6912.06 is $23,237.06, not $22,347.06. On the receiver report, however, the total of $16,325 and $6912.06 is given as $22,347.06. It appears that Bona made a calculation error on the receiver report, on which Seaport and the court subsequently relied.

[17] Bona filed a final receiver report in February, 2016, in each of the foreclosure cases. The court, however, determined that the filed documents did not resemble receiver reports and were unsatisfactory. As a result of Bona's failure to account for funds, the court reiterated its order that he reimburse the court for the income listed in the orders for payment.

[18] Bona also argues that Seaport's claims previously had been settled before Judge Cosgrove on April 3, 2014. Bona failed to raise this claim in the trial court, and, therefore, it was not preserved for appellate review. See Practice Book § 60-5.