******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff brought an action against the defendant M Co., seeking to
recover, inter alia, damages for the allegedly fraudulent transfer of cer-
tain assets to M Co. The plaintiff, who was the owner of two fitness
centers, sold the businesses to R, who bought the businesses through
C Co. and O Co. That purchase was financed by a bank loan from W
Co. that was secured by a security interest in the assets of C Co. and
O Co. Subsequently, M Co. reached an agreement with R to purchase
the assets of C Co. and O Co. The agreement was approved by W Co.,
which subsequently released its lien on the assets of C Co. and O Co.
in exchange for $100,000, even though its loan exceeded $800,000, and
the plaintiff released his subordinate lien on those assets in exchange
for $59,806.13. M Co. then sold the assets of C Co. and O Co. to a new
tenant in the building for $159,806.13. The plaintiff thereafter brought
the present action, alleging violations of the Uniform Fraudulent Trans-
fer Act (UFTA) (§ 52-552a et seq.), common-law fraudulent transfer, and
violations of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-
110a et seq.). The plaintiff claimed that M Co., C Co., and O Co. conspired
to strip C Co. and O Co. of assets sufficient to satisfy their indebtedness
to him by fraudulently transferring those assets to M Co. for a price
that was not reasonably equivalent to their value. After the trial court
granted a motion for summary judgment filed by M Co. and rendered
judgment thereon, it denied the plaintiff's motion to reargue, and the
plaintiff appealed to this court. *Held*:

1. The plaintiff could not prevail on his claim that the trial court improperly
concluded that the transfer of the property of C Co. and O Co. to M
Co. was not fraudulent under the common law or UFTA, which was
based on the court's determination that the property did not constitute
"assets" because it was encumbered by a valid lien in excess of its
value: that court determined, on the basis of an affidavit submitted by
the plaintiff's expert witness, that because it was undisputed that the
property transferred to M Co. had a value of $551,437 and was encum-
bered by a valid lien held by W Co. in excess of $800,000 at the time
of that transfer, it did not meet the definition of "assets," the plaintiff's
own deposition testimony and an affidavit submitted by a member of
M Co. supported the court's finding as to the amount of the W Co. lien,
and the plaintiff did not submit any evidence in opposition to the motion
for summary judgment that disputed the amount of that lien; moreover,
the plaintiff's claim that the transfer of assets was not limited to the
personal property or equipment of C Co. and O Co. but, instead, included
the businesses of C Co. and O Co., the value of which exceeded the W
Co. lien, was unavailing, as the record was clear that M Co. did not
purchase the businesses of C Co. and O Co. but only the personal
property, consisting of the gym and office equipment, and, therefore,
the record supported the trial court's determination that the property
transferred to M Co. did not constitute "assets" that were subject to
fraudulent conveyance because there was no genuine issue of material
fact that the property was encumbered by a valid lien that exceeded
its value at the time of the transfer.

2. The plaintiff could not prevail on his claim that the trial court improperly
rendered summary judgment on his CUTPA claim, which was based on
his claim that the underlying conduct on which he claimed that M Co.
violated CUTPA was broader than the facts supporting his fraudulent
transfer claims: the plaintiff's claim was belied by the complaint itself,
wherein the plaintiff simply incorporated the facts from his fraudulent
transfer counts and added allegations that those facts constituted an
unfair or deceptive practice by M Co. that caused him to suffer an
ascertainable loss in violation of CUTPA, and although, with respect to
his fraudulent transfer claims, the plaintiff set forth an allegation, which

he then incorporated into his CUTPA count, that M Co. secretly conspired to purchase the property from C Co. and O Co. to strip them of any assets to satisfy their debts to him, such a bare assertion did not raise a claim of a deceptive or unfair trade practice that was factually or legally distinct from the plaintiff's claims relating to alleged fraudulent transfers; moreover, the plaintiff's discussion of this issue in his brief on appeal was confined to a single paragraph in which he failed to explain, other than in sweeping generalities, how that allegation, if proven, would amount to an unfair trade practice, separate and distinct from the claims relating to fraudulent transfer.

3. The trial court did not abuse its discretion in denying the plaintiff's motion to reargue the motion for summary judgment; the plaintiff's motion to reargue sought to rehash the arguments that the plaintiff previously had made in opposition to the motion for summary judgment, which had already been presented to, and rejected by, the trial court.

Argued March 11—officially released June 25, 2019

*Procedural History*

Action to recover damages for, inter alia, the allegedly fraudulent transfer of certain property to the named defendant, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Aurigemma, J.*, granted the named defendant's motion for summary judgment and rendered judgment thereon; thereafter, the court denied the plaintiff's motion to reargue, and the plaintiff appealed to this court. *Affirmed.*

*Rowena A. Moffett*, for the appellant (plaintiff).

*Kenneth J. McDonnell*, with whom, on the brief, was *Michael L. McGlinchey*, for the appellee (named defendant).

*Opinion*

PRESCOTT, J. In this commercial dispute relating to the sale of certain property belonging to two fitness centers, the plaintiff, Brant Smith, appeals from the summary judgment rendered in favor of the defendant Marshview Fitness, LLC.[1] The trial court concluded that the defendant was entitled to summary judgment because the transfer of certain property, in which the plaintiff claims to have had an economic interest, was not fraudulent, as a matter of law, under either the common law or the Uniform Fraudulent Transfer Act (UFTA), General Statutes § 52-552a et seq. In doing so, the trial court also rejected the plaintiff's related claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

On appeal, the plaintiff claims, among other things,[2] that the trial court improperly (1) concluded that the transfer at issue was not fraudulent under the common law or UFTA because the property that was transferred did not constitute "assets," (2) rejected his CUTPA claim on the ground that it was based solely on his allegations of fraudulent transfer, and (3) denied his motion to reargue. We affirm the judgment of the trial court.

The trial court set forth the following factual and procedural history. "The plaintiff was the owner of two fitness centers that had been operated as 'Shoreline Health and Fitness' in Clinton and Old Saybrook, Connecticut. On September 15, 2010, the plaintiff and his former partners sold the businesses to Ryan Rothschild. Rothschild bought the businesses through two separate companies, SHF-Clinton, LLC, and SHF-Old Saybrook, LLC (SHF entities). The Rothschild/SHF entities' purchase of the plaintiff's fitness centers was financed by Wells Fargo Bank [Wells Fargo] under a program sponsored by the United States Small Business Administration [SBA]. The principal amount of the Wells Fargo loan at the time of the plaintiff's sale to the SHF entities was $1.2 million. That loan was secured by a security interest in the assets of the SHF entities, which was prior in right to the security interest of the plaintiff.

"As part consideration for the sale to Rothschild, the plaintiff took back a promissory note for $150,000 and another note for $300,000. Rothschild defaulted on the notes, and the plaintiff commenced [an action] against him titled *Smith* v. *Rothschild*, [Superior Court, judicial district of Middlesex, Docket No. CV-14-6012641-S] (Rothschild action). In that case, the plaintiff filed a motion for temporary injunction and court-ordered inspection of company records dated October 21, 2014. That motion sought to enjoin Rothschild from selling the interests or assets of the SHF entities and an order permitting the plaintiff to inspect and copy the books and records of the SHF entities. The plaintiff never

sought a hearing or otherwise proceeded on the foregoing motion.

"In connection with the motion for temporary injunction, the plaintiff signed an affidavit in which he averred that the $300,000 note referred to above was secured by a security agreement [that] gave the plaintiff 'a continuing security interest in all of the assets of [the SHF entities].' . . . [The plaintiff] also averred that 'I maintain that I am entitled to a right of first refusal with respect to any proposed sale of the [SHF entities].' . . .

"While the plaintiff was litigating his claims against Rothschild, he was simultaneously negotiating with Rothschild to purchase the assets of the SHF entities. The plaintiff's offer to purchase the assets of the SHF entities was accepted by Rothschild. However, Wells Fargo did not accept the offer because SBA regulations prohibited repurchase of the assets by the plaintiff, a former owner. At that time, Rothschild and the SHF entities owed Wells Fargo in excess of $800,000 on the SBA loan used to purchase the assets from the plaintiff. Wells Fargo had to agree to release its security interest in the SHF entities' assets before [they] could be sold.

"[The defendant] was the landlord for the SHF-Clinton fitness center. The members of [the defendant] are Todd Pozefsky and John Giannotti. After the plaintiff's failed attempt to purchase the assets of the SHF entities, Pozefsky and Giannotti negotiated with Rothschild for the purpose of purchasing the assets of the SHF entities so that Rothschild would voluntarily vacate the [defendant's] premises.

"[The defendant] reached an agreement with Rothschild to purchase the assets of the SHF entities. The agreement was approved by Wells Fargo, which agreed to accept $100,000 to release its security interest in the SHF entities' assets, even though its loan exceeded $800,000. Wells Fargo approved the sale by Rothschild contingent on the plaintiff receiving no more than $63,500 in exchange for the release of his subordinate security interest in the assets of the SHF entities. At his deposition, the plaintiff admitted that he was aware of the [defendant's] purchase, and that he was represented by counsel in the preparation of a payoff letter accepting $59,806.13 in exchange for a release 'terminating [his Uniform Commercial Code] lien on the assets of the [SHF entities].' . . .

"On February 26, 2016, Wells Fargo released its lien on the SHF entities' assets in exchange for $100,000, and the plaintiff released his subordinate lien on those assets in exchange for $59,806.13.[3] On February 29, 2016, [the defendant] then sold the assets to a new tenant in the building for $159,806.13, the exact amount it had paid for the assets.

"After the sale of the SHF entities' assets, Rothschild stopped defending the Rothschild action and allowed

a default judgment to enter against himself and the SHF entities. Rothschild then appealed the default judgment and filed bankruptcy proceedings. Although the plaintiff released his lien in order to permit the sale of the SHF entities' assets to occur, he now claims that [the] sale constituted a fraudulent transfer as to him." (Citations omitted; footnote added.)

The plaintiff brought this action by way of a four count complaint dated August 10, 2016, alleging violations of UFTA under General Statutes §§ 52-552e and 52-552f in the first two counts, respectively, a common-law fraudulent transfer in the third count, and a violation of CUTPA in the fourth count. The plaintiff alleged that the defendant and the SHF entities conspired to "strip the SHF entities of assets sufficient to satisfy their indebtedness to [him]" by fraudulently transferring the assets of the SHF entities to the defendant for a price that was not reasonably equivalent to their value.

On August 1, 2017, the defendant moved for summary judgment, arguing that it was entitled to judgment as a matter of law on all counts of the plaintiff's complaint. The plaintiff objected to the defendant's motion, asserting that the defendant had "failed to meet its burden of showing that there was no genuine issue as to any material fact." By way of a written memorandum of decision filed on November 16, 2017, the court granted the defendant's motion for summary judgment. The court concluded that the defendant was entitled to judgment as a matter of law on the plaintiff's fraudulent transfer claims for three reasons: (1) the plaintiff consented to and voluntarily participated in the transaction that he now claims was fraudulent; (2) the defendant retained no proceeds from the transaction; and (3) the property that was transferred did not constitute "assets" of the SHF entities because it was encumbered by a valid lien. The court further concluded that the defendant was entitled to judgment as a matter of law on the plaintiff's CUTPA claim because that claim was based on the invalid claims of fraudulent transfer. The court denied the plaintiff's subsequent motion to reargue, and this appeal followed.

We begin by setting forth the relevant standard of review that governs our review. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The courts are in entire agreement that the moving party . . . has the burden of showing the absence of any genuine issue as to all the material facts . . . . When

documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the [nonmoving] party must present evidence that demonstrates the existence of some disputed factual issue. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018). With these principles in mind, we turn to the plaintiff's claims on appeal.

I

The plaintiff first challenges the trial court's summary judgment on his claims of fraudulent transfer. Specifically, the plaintiff argues that the court improperly concluded that the transfer of the SHF entities' property to the defendant was not fraudulent on the ground that the property did not constitute "assets" because it was encumbered by a valid lien in excess of its value. We are not persuaded.

"A party alleging a fraudulent transfer or conveyance under the common law bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . The party seeking to set aside a fraudulent conveyance need not satisfy both of these tests. . . . These are also elements of an action brought pursuant to . . . §§ 52-552e (a) and 52-552f (a). . . . Indeed, although [UFTA] provides a broader range of remedies than the common law . . . [it] is largely an adoption and clarification of the standards of the common law of [fraudulent conveyances] . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 394–95, 957 A.2d 836 (2008). Accordingly, our Supreme Court has considered claims of fraudulent transfer based on the common law and claims based on UFTA together. See id.; see also *National Loan Investors, L.P.* v. *World Properties, LLC*, 79 Conn. App. 725, 731 n.8, 830 A.2d 1178 (2003) ("[o]ur analysis proceeds under the UFTA, but a common-law analysis would reach the same result"), cert. denied, 267 Conn. 910, 840 A.2d 1173 (2004).

Section 52-552e (a) sets forth the test to determine whether a transfer is fraudulent: "A transfer made or obligation incurred by a debtor is fraudulent as to a

creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

The term transfer is defined by General Statutes § 52-552b (12) to mean "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." Section 52-552b (2) defines an asset as, "property of a debtor, but the term does not include . . . (A) Property to the extent it is encumbered by a valid lien . . . ." A valid lien, pursuant to § 52-552b (13), is "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." Thus, a transfer cannot be considered fraudulent if, at the time of the transfer, the transferred property is encumbered by valid liens exceeding the property's value because the property would no longer be considered an asset under § 52-552b (2), and only assets may be transferred fraudulently. See generally *Dietter* v. *Dietter*, 54 Conn. App. 481, 494, 737 A.2d 926, cert. denied, 252 Conn. 906, 743 A.2d 617 (1999).[4]

Here, the trial court determined that it was undisputed that the property transferred to the defendant had a value of $551,437 and was encumbered by a valid lien held by Wells Fargo in excess of $800,000 at the time of that transfer. The trial court based its valuation on an affidavit submitted by the plaintiff's expert witness, Joe Fay. On that basis, the court concluded that the property did not meet the definition of "assets" and that the transfer of that property could not be considered fraudulent.

The plaintiff's challenge to the trial court's conclusion that the property transferred did not constitute "assets" is twofold. First, the plaintiff claims that there was a dispute as to the amount of the Wells Fargo lien. In support of its finding of the amount of the Wells Fargo lien, the trial court cited to the plaintiff's own deposition testimony in which he estimated the outstanding debt to Wells Fargo to be "in the neighborhood of $800,000." The defendant filed with its memorandum of law in support of summary judgment, the affidavit of Pozefsky, in which he averred that, at the time of the allegedly fraudulent transaction, the transferred property was

encumbered by a lien held by Wells Fargo in excess of $800,000. The plaintiff did not submit any evidence in opposition to summary judgment that disputed the amount of the lien and, thus, failed to demonstrate the existence of a genuine issue of material fact as to it.

Second, the plaintiff argues that the transfer was not limited to the personal property or equipment of the SHF entities but, instead, included the SHF businesses themselves, the value of which exceeded the Wells Fargo lien. The plaintiff contends that the property transferred to the defendant included the "customer list and business goodwill" of the SHF entities. The plaintiff has not provided a citation to the record in support of this argument, and our exhaustive search of the record has revealed no evidentiary support for it. The Asset Purchase Agreement clearly provides that the defendant would purchase "certain assets" of the SHF entities, including "all equipment, furniture and fixtures, inventory and computers" that are listed on Exhibit A, Assets-Equipment List, attached thereto. Likewise, Pozefsky's affidavit states that the defendant agreed to purchase "all equipment, furniture and fixtures, inventory and computers utilized by the SHF entities . . . ." The payoff letter from Wells Fargo also references "collateral comprising all equipment, furniture, fixtures, inventory and computers." The record is clear that the defendant did not purchase the businesses of the SHF entities but only the personal property, consisting of the gym and office equipment.[5]

On the basis of the foregoing, we conclude that the record supports the trial court's determination that the property transferred to the defendant did not constitute "assets" that were subject to fraudulent conveyance because there was no genuine issue of material fact that it was encumbered by a valid lien that exceeded its value at the time of the transfer. Accordingly, the court did not improperly render summary judgment in favor of the defendant on all three of the fraudulent transfer counts of the plaintiff's complaint.

## II

The plaintiff also claims that the trial court improperly rendered summary judgment on count four alleging that the defendant violated CUTPA. The plaintiff contends that the underlying conduct on which he claims the defendant violated CUTPA is broader than the facts supporting his fraudulent transfer claims. We disagree.

The plaintiff brought this action by way of a four count complaint; three counts alleging fraudulent transfer and a fourth count alleging a violation of CUTPA. In the fourth count, the plaintiff incorporated by reference most of the paragraphs of the first three counts of his complaint and set forth two additional paragraphs. In addition to the fraudulent transfer allegations that he incorporated into his CUTPA count, the plaintiff

alleged: "[The defendant's] conduct as aforesaid constitutes unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of CUTPA." The plaintiff also alleged: "As a direct result of [the defendant's] wrongful conduct, [the plaintiff] has suffered ascertainable loss. More specifically, but without limitation, [the defendant's] purchase of the SHF entities' assets for less than reasonable value deprived the SHF entities of sufficient means to satisfy their indebtedness to [the plaintiff]."

In granting summary judgment on the plaintiff's CUTPA claim, the trial court explained: "In count four of the complaint, the plaintiff alleges a violation of CUTPA based on the fraudulent conveyances alleged in counts one through three. As set forth above, the court has found that there were no fraudulent conveyances. Therefore, summary judgment enters on count four, as well as counts one through three."

"CUTPA is, on its face, a remedial statute that broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . [CUTPA] provides for more robust remedies than those available under analogous common-law causes of action, including punitive damages . . . and attorney's fees and costs, and, in addition to damages or in lieu of damages, injunctive or other equitable relief. . . . To give effect to its provisions, [General Statutes] § 42-110g (a) of [CUTPA] establishes a private cause of action, available to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [General Statutes §] 42-110b . . . ." (Internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 317 Conn. 602, 623, 119 A.3d 1139 (2015).

The plaintiff argues that "the underlying conduct which formed the basis of [his] CUTPA claim is broader than the facts supporting the fraudulent transfer claims." This argument is belied by the complaint itself, wherein the plaintiff simply incorporated the facts from his fraudulent transfer counts and added allegations that those facts constituted an unfair or deceptive practice by the defendant that caused him to suffer an ascertainable loss in violation of CUTPA.

It is true that, with respect to his fraudulent transfer claims, the plaintiff set forth an allegation, which he then incorporated into his CUTPA count, that the defendant secretly conspired to purchase the subject property from the SHF entities to strip them of any assets to satisfy their debts to him. We are not persuaded that this bare assertion raises a claim of a deceptive or unfair trade practice that is factually or legally distinct from his claims relating to alleged fraudulent transfers. Indeed, the plaintiff's discussion of this issue in his brief on appeal is confined to a single paragraph in which

he fails to explain, other than in sweeping generalities, how that allegation, if proven, would amount to an unfair trade practice, separate and distinct from the claims relating to fraudulent transfer. We, therefore, conclude that the plaintiff's argument that his CUTPA claim was broader than his allegations of fraudulent transfer is unavailing.

### III

The plaintiff finally claims that the trial court erred in denying his motion to reargue the motion for summary judgment. We disagree.

"The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did. . . .

"The purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) *Seaport Capital Partners, LLC* v. *Speer*, 177 Conn. App. 1, 16–17, 171 A.3d 472 (2017), cert. denied, 331 Conn. 931,     A.3d     (2019).

In his motion to reargue, including his memorandum of law in support of the motion and several exhibits, which consisted of 166 pages in total, the plaintiff asserted that the court had "overlook[ed] controlling principles of law and demonstrate[d] a misapprehension of certain key facts, which preclude[d] the [rendering] of summary judgment in [the] defendant's favor." The court summarily denied the plaintiff's motion.

The plaintiff claims on appeal that the court abused its discretion in denying his motion to reargue "given the controlling legal precedent and key facts precluding the entry of summary judgment, which were presented to the court but which the court failed to correct following its decision, resulting in an injustice because of the court's oversight of material issues of fact and law." On the basis of our review of the plaintiff's motion to reargue, we conclude that, as to the dispositive issues addressed in this opinion, the plaintiff was seeking to rehash the arguments that he made in opposition to summary judgment, which had already been presented to and rejected by the trial court.[6] We, therefore, conclude that the court did not abuse its discretion in denying the plaintiff's motion to reargue.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] SHF-Clinton, LLC, and SHF-Old Saybrook, LLC, also are defendants in this action. They have been defaulted for failing to appear and the claims against them are still pending. Because they have not participated in this appeal, any reference herein to the defendant is to Marshview Fitness, LLC.

[2] With respect to the fraudulent transfer claims, the plaintiff challenges each of the three legal grounds on which the court based its conclusion that the defendant was entitled to judgment as a matter of law on those claims. We agree that the property transferred did not qualify as an "asset" that could be transferred fraudulently in light of the fact that it was encumbered by a valid lien that exceeded its value. Accordingly, we need not address the plaintiff's challenges to the court's additional grounds for concluding that the transfer was not fraudulent.

[3] The plaintiff argues that the trial court erroneously determined that by releasing his $150,000 lien in exchange for $59,806.13, he consented to the alleged fraudulent transfer. The plaintiff contends that he did not consent, and that he retained a right to prevent the sale of the SHF entities' assets under a security agreement related to the $300,000 note. We need not address this argument, as it is not material to the grounds on which we base our resolution of the plaintiff's claims on appeal.

[4] The plaintiff also argues that the definition of "asset" under UFTA does not apply to his common-law fraudulent transfer claim. The plaintiff fails, however, to provide any analysis or cite to any legal authority for this argument, and his argument is belied by this court's decision in *National Loan Investors*, *L.P.* v. *World Properties*, *LLC*, supra, 79 Conn. App. 725, as discussed herein. Indeed, the rationale for this principle—that any property of the debtor that is encumbered would not generally be available to pay the debts of its creditors, as those holding security interests would be first in line and, thus, are not considered assets—is logically applicable to common-law claims, as well as to claims under UFTA.

[5] The plaintiff also argues that the property was not encumbered at the time of the transfer because Wells Fargo released its lien "prior to the consummation of the subject transaction." The plaintiff ignores the facts that the release of the Wells Fargo lien was required in order for the transaction to take place, and the lien would not have been released if Wells Fargo had not been satisfied by the proceeds from the transaction at issue.

[6] The defendant argues that the plaintiff improperly attached exhibits to his motion to reargue that he did not submit in his opposition to summary judgment, and because those documents were not submitted in his opposition, they were not properly before the court in deciding the plaintiff's motion to reargue. Because we conclude that the plaintiff's motion to reargue constituted an improper attempt to rehash his arguments in opposition to summary judgment, we need not address the propriety of the plaintiff's submission of new exhibits with his motion to reargue.